# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FRED W. ALLNUTT, SR.,
            *Petitioner-Appellant,*

v.                                           No. 06-1477

COMMISSIONER OF INTERNAL REVENUE,
            *Respondent-Appellee.*

Appeal from the United States Tax Court.
(Tax Ct. No. 00-6133)

Argued: March 19, 2008

Decided: April 23, 2008

Before DUNCAN, Circuit Judge, HAMILTON, Senior Circuit
Judge, and William L. OSTEEN, Jr., United States District Judge
for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Senior Judge Hamilton and Judge Osteen joined.

## COUNSEL

**ARGUED:** Charles E. McFarland, New Castle, Kentucky, for Appel-
lant. Marion Elizabeth Erickson, Tax Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON
BRIEF:** Eileen J. O'Connor, Assistant Attorney General, Andrea R.
Tebbets, Tax Division, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee.

**OPINION**

DUNCAN, Circuit Judge:

Appellant Fred W. Allnutt, Sr. ("Allnutt") failed to timely file his federal income tax returns for the years 1981 through 1995. In 1997, after being acquitted of certain tax crimes, Allnutt prepared the past returns and submitted them to the Internal Revenue Service ("IRS"). In 2000, the IRS issued a notice of deficiency for those tax years, indicating that he underpaid by nearly two million dollars.

Allnutt subsequently filed a petition before the United States Tax Court arguing that the notice of deficiency was barred by the three-year limitations period established in § 6501(a) of the Internal Revenue Code (the "Code"), 26 U.S.C. § 6501(a), and that the IRS was therefore prohibited from assessing and collecting his delinquent taxes and accrued penalties. The Tax Court found that the IRS properly issued the notice to Allnutt within the three-year period immediately following the date that he filed his income tax returns. Because Allnutt has failed to demonstrate that he "meticulously complied" with the applicable statutory provisions for filing income tax returns on a date more than three years prior to the IRS's issuance of the notice of deficiency, we affirm the Tax Court's judgment.

I.

The parties agree that the IRS issued Allnutt a notice of deficiency on March 6, 2000. The parties also agree that § 6501 of the Code requires the IRS to assess a taxpayer's deficient taxes or to issue him a notice of deficiency within three years from the date the taxpayer "files" his federal income tax return. The dispute here centers on the date Allnutt should be deemed to have "filed" the returns in question. Thus, we focus on the facts pertinent to establishing whether Allnutt's 1981 through 1995 tax returns were filed prior to March 6, 1997.

A.

After a federal investigation into Allnutt's alleged Internal Revenue Code violations concluded in 1997, Allnutt hired an accounting firm

to belatedly prepare his tax returns (Forms 1040) for the years 1981 through 1995. He was instructed by his counsel, who was in contact with the Department of Justice, to "file [his returns by hand] with the District Coun[se]l's office in Baltimore."[1] J.A. 208. On February 20, 1997, Allnutt signed his prepared tax returns for the years 1981 through 1995 (the "original returns") and wrote the following letter of transmittal to accompany those returns, addressed to the IRS District Director for the Baltimore area, Paul Harrington ("Harrington"), and the IRS District Counsel for the Baltimore area, Elizabeth Henn ("Henn"):

> Dear Mr. Harrington and Mrs. Henn,
>
> I am delivering to District Counsel with this letter original filings of 1040 tax returns for the year 1981 and for each year thereafter up through and including 1995. My attorney, Mr. Jeffrey Dickstein, has spoken with Mr. Gregory S. Hrebiniak, Department of Justice, who instructed him to have me file said returns with District Counsel.

J.A. 199. Allnutt then photocopied the returns and signed over the photocopied signatures with blue ink (the "photocopied returns").

On February 21, 1997, Allnutt delivered the original returns, along with the letter of transmittal, to Henn's secretary at the IRS District Counsel's office in Baltimore. Allnutt admits that he intended for these original returns to be his filed returns and that he thought he had effectively filed them by delivering them to the District Counsel's office.[2] Henn's secretary stamped the transmittal letter "received

---

[1]As Allnutt later realized, this advice was ill-given. The District Counsel's office is part of the IRS's legal department which, with the help of the United States Justice Department, represents the IRS in certain court proceedings. It does not have the authority to accept tax returns for filing. In 1997, a Baltimore, Maryland resident, such as Allnutt, wishing to file his federal income tax returns by hand was required to deliver the returns to the District *Director's* Office in Baltimore, not the District *Counsel's* Office. *See* 26 C.F.R. § 1.6091-2 (1997). The District Director's Office, now defunct, was responsible for the administration of all IRS operations within a given tax district.

[2]Allnutt acknowledged before the Tax Court, and again on appeal, that delivery of the original returns to the District Counsel's office did not

2/21/97" and signed her name under the stamp. J.A. 199. These original returns were ultimately forwarded from the District Counsel's Office to the Special Procedures Office of the Baltimore District Director (the "Special Procedures Office").[3] The original returns arrived at the Special Procedures Office without any identifying marks or date/time stamps. The Special Procedures Office stamped them "received" on March 10, 1997. An unknown individual from that office later wrote, "Copy of Return Secured [or Received] by Examination. 5/1/97," on the top of the first page of each of the returns. *See Allnutt v. C.I.R.*, T.C.M. (RIA) 2002-311, 2002 WL 31875119, at *2 (2002). These returns were never further processed by the IRS. *See* J.A. 24.

After Allnutt left the District Counsel's office, he took the transmittal letter and the photocopied returns in a clasped envelope marked "Attention Mr. Paul Harrington" to the IRS office building housing the Baltimore District Director's offices. He did so to "provid[e] [District Director Harrington] copies of the returns . . . as a courtesy more than as a filing." J.A. 218. Upon his arrival to the building, Allnutt asked a security guard for directions to Harrington's office. The guard told him that Harrington was at lunch and directed him to a second person. The second person, an unidentified gentleman whom Allnutt encountered on a different floor than Harrington's office, also told Allnutt that Harrington was at lunch and offered to take the package from him and give it to Harrington upon his return. Allnutt asked the gentleman, whose title or position Allnutt failed to request or obtain, if he had "authority to accept packages on behalf of Mr. Harrington." J.A. 221. The gentleman responded affirmatively. Allnutt then asked if he would "be sure to give it to Mr. Harrington personally." J.A. 221. The gentleman agreed, and Allnutt gave him the package. At no time did Allnutt disclose to the gentleman the contents of the package, ask that the gentleman see to the filing of the enclosed returns, ask

---

constitute "filing" of those returns under the applicable provisions of the Internal Revenue Code and the United States Treasury Regulations ("Treasury Regulations" or "Regulations").

[3]The Special Procedures Office of the District Director is responsible for various aspects of tax collection within a district, but does not ordinarily accept tax returns for filing.

that the package or the enclosed returns receive a date stamp, or request a filing receipt. Allnutt testified that he "didn't consider getting a second date stamp [at the District Director's offices] because the first date stamp [at the District Counsel's office] to [him] confirmed the filing date." J.A. 218. Allnutt also failed to consult the IRS employees working at the "Taxpayer Services" walk-in area located on the first floor of the building, as is customary for taxpayers attempting to file hand-delivered returns.

District Director Harrington's secretary, Susan Arczynski ("Arczynski"), testified before the Tax Court that she typically processed all deliveries addressed to Harrington and that if the gentleman in the hallway brought the package in question to Harrington's office it "would have been presented to [her]." J.A. 221. Her usual practice was to stamp an item with the time and date that she received it, and to use Harrington's routing stamp on the item if there was room to do so. If there was no room on the document, she would ordinarily staple to the item a small routing slip containing the same information as the routing stamp. According to Arczynski, she always used a routing stamp if the item was an income tax return. She also testified that personnel in the District Director's offices usually directed persons who wanted to file a tax return to the walk-in area of the Taxpayer Services office located on the entry level, or first floor.

Arczynski was present at the District Director's offices on February 21, 1997—the day that Allnutt visited the building—but could not remember whether she had received the package containing his photocopied returns. These photocopied returns received no routing stamp or routing slip marked February 21, 1997. Sometime between that date and May 9, 1997, however, the photocopied returns were forwarded to the IRS Philadelphia Service Center. On the front page of each return appears: (1) "IRS Received from District 052197"; (2) "Postmark 050997" and "Received 051497"; (3) "Delinquent Original Cleared for Processing by 285" on June 16, 1997; and (4) "Resort Received" on June 27, 1997. *See Allnutt v. C.I.R.*, T.C.M. (RIA) 2002-311, 2002 WL 31875119, at \*3 (2002). On the bottom left corner of the front page of each return,"POS sorted for statute review, 5-14-97," also appears, but is struck out in an attempt to make it indistinguishable. *Id.* On a date not specified in the record, an unidentified IRS employee also added a document locator number to the upper

right corner of the first page of each photocopied return. The government admits that these returns, rather than the originals delivered to the District Counsel's office, were those processed by the IRS. *See* J.A. 24.

B.

Section 6501 of the Code requires the IRS to assess any deficiency in a taxpayer's payment of taxes or to issue a notice of deficiency to the taxpayer within three years from the date the taxpayer files the applicable return. *See* 26 U.S.C. § 6501. IRS personnel use an internal document, Form 895, to keep track of the limitations period for each filed return. Any IRS employee who handles a return "has the responsibility to ensure that the statute of limitations date for that return is correctly reflected in the case file" and on the form. Internal Revenue Service, Internal Revenue Manual 4.7.3.4, http://www.irs.gov/irm/ (last visited April 16, 2008). Personnel are instructed to determine that date by first ascertaining the return's "Received Date" and then adding to it the appropriate limitations period. *Id.* 25.6.2.4.13-15. The "Received Date," in turn, is deduced from the date postmarked on the envelope in which the returns were sent or on the return itself. If there are no such postmarks, IRS employees are instructed to record the taxpayer's self-reported date of signature, found on the return, as the "Received Date." *Id.* 25.6.2.4.13.

The IRS employee initially responsible for Allnutt's file was Franklin D. Blum ("Blum"). Blum recorded the "Received Date" for Allnutt's return as February 20, 1997. Blum ascertained this date based upon Allnutt's date of signature because there were no postmarked dates available on either the face of the returns or the envelope containing the returns. Blum thus recorded the statute of limitations expiration date on the Form 895 as February 20, 2000— three years from Allnutt's date of signature. The February 20th expiration date was subsequently certified as correct by another IRS employee. On February 25, 2000, however, this expiration date was updated and changed, by an unidentified IRS employee, to March 10, 2000—three years from the date the original returns were received by the Special Procedures Office of the Baltimore District Director from the District Counsel's office.

The IRS mailed a notice of deficiency to Allnutt for the years 1987-1990 and 1992-1995 on March 6, 2000.[4] The notice listed All- nutt's tax deficiencies as: $1,197,033 for tax year 1987; $274,126 for 1988; $10,253 for 1989; $112,208 for 1990; $82,632 for 1992; $1,774 for 1993; $17,581 for 1994; and $19,992 for 1995, plus additions to tax under § 6651(a)(1) of the Code for failure to file timely returns and under § 6653(a) for negligence, and accuracy-related penalties under § 6662. The notice of deficiency was issued more than three years after Allnutt delivered both the original returns to the District Counsel's office and the photocopied returns with original signatures to the unidentified individual in the building housing the Baltimore District Director's offices—February 21, 1997. The notice was issued less than three years, however, from the date the original returns were marked as received by the Special Procedures Office of the Baltimore District Director—March 10, 1997, and the date the Philadelphia Ser- vice Center marked the photocopied returns as postmarked—May 9, 1997.

Allnutt subsequently filed a petition in the United States Tax Court for review and redetermination of the deficiencies asserted in the notice, pursuant to § 6213(a) and § 6503(a) of the Code. He later filed a motion for summary judgment, claiming that the three-year limita- tions period barred the IRS's issuance of the notice of deficiency and the subsequent assessment of his tax deficiencies. The Tax Court denied Allnutt's motion and held a hearing on the issue. The Tax Court ultimately found the following: (1) Allnutt was a credible wit- ness and did deliver the photocopied returns with original signatures to "someone in the building containing the District Director's offices on February 21, 1997"; (2) Allnutt did not, however, "file" those pho- tocopied returns on that date because he did not "honestly and reason- ably" intend those returns to be "his filed returns," and "[a] taxpayer may not, by his or her ambiguous conduct, even if unintentional, secure the benefit of the limitations period"; and (3) Allnutt's "returns were filed on March 10, 1997, when the Special Procedures Office of the Baltimore District Director stamped them received." *See Allnutt*

---

[4]This notice also included Allnutt's deficiency amounts for tax years 1996 and 1997. We do not include those amounts here because Allnutt only contends that the notice of deficiency was untimely for years 1987- 1990 and 1992-1995.

*v. C.I.R.*, T.C.M. (RIA) 2002-311, 2002 WL 31875119, at *4-5 (2002). Therefore, the court held that the notice of deficiency, sent by the IRS on March 6, 2000, was properly issued within the three-year limitations period beginning on March 10, 1997—the date that All-nutt's returns were deemed filed. After the Tax Court issued its final decision on other issues in Allnutt's case not applicable here, Allnutt filed a timely appeal.

## II.

Allnutt maintains that the three-year limitations period established in 26 U.S.C. § 6501(a) barred the IRS from assessing the deficiencies in his income taxes. He claims that he "filed" his returns on February 21, 1997, thereby triggering the start of the limitations period, when he gave the clasped package containing his photocopied returns to the unidentified gentleman in the District Director's office. Thus, according to Allnutt, the three-year statute of limitations expired on February 21, 2000—approximately two weeks prior to the IRS's issuance of the notice of deficiency on March 6, 2000. We review de novo the legal question of whether Allnutt's so-called "delivery" of the photocopied returns with original signatures constituted a "filing sufficient to start the running of the period of limitation." *See Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453, 462 (1930); *see also Badaracco v. C.I.R.*, 464 U.S. 386, 391-92 (1984).

Section 6501(a) of the Code provides that the IRS must assess any deficiency in the payment of income taxes "within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)." 26 U.S.C. § 6501(a). As a general rule, no such assessment can be made until a notice of deficiency has been mailed to the taxpayer. *See id.* § 6213(a). "[T]he IRS's mailing of a notice of deficiency simultaneously serves two functions. First, it tolls the three-year statute of limitations, and second, it commences a process that enables the taxpayer to challenge the deficiency." *St. Joseph Lease Capital Corp. v. C.I.R.*, 235 F.3d 886, 888 (4th Cir. 2000). Once a notice is mailed, the three-year period is extended 90 days from the mailing date to permit the taxpayer an opportunity to petition the Tax Court for a redetermination of the deficiency. *See id.* §§ 6213(a), 6503(a). If the taxpayer files such a petition, the three-year period is extended yet further until 60 days following the date

when the decision of the court on the taxpayer's petition becomes final. *See id.* § 6503(a); *St. Joseph Lease Capital Corp.*, 235 F.3d at 888. If the IRS fails to meet any of the above deadlines, the limitation period expires and the IRS is barred from assessing, and therefore collecting, any deficiency owed by the taxpayer. *Id.*

It is well established that "a statute of limitation runs against the United States only when [it] assent[s] and upon the conditions prescribed." *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930). "Statutes of limitation sought to be applied to bar rights of the Government, [therefore] must receive a strict construction in favor of the Government." *Badaracco*, 464 U.S. at 391-92. (quoting *E.I. Du Pont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)). Thus, a taxpayer seeking to "secure the benefit of the limitation" must demonstrate "*meticulous compliance* . . . with all named conditions" and applicable requirements of the Code and the Treasury Regulations. *Lucas*, 281 U.S. at 249 (emphasis added).

Section 6091(b)(1)(A) of the Code requires that an individual taxpayer file his federal income tax return "(i) in the internal revenue district in which is located [his] legal residence or principal place of business . . . or (ii) at a service center serving th[at] internal revenue district . . ., as the Secretary [of the Treasury] may by regulations designate." The Treasury Regulations in effect in 1997, when Allnutt's returns were allegedly filed, provided the following:

> (a) . . . [I]ncome tax returns of individuals, estates and trusts shall be filed with the district director for the internal revenue district in which is located the legal residence or principal place of business of the person required to make the return, or, if such person has no legal residence or principal place of business in any internal revenue district, with the District Director at Baltimore, Md. 21202.

> (d) Hand-carried returns. . . .

> (1) Persons other than corporations. Returns of persons other than corporations which are filed by hand carrying shall be filed with the district director (or with any person assigned the administrative supervision of an area, zone or

local office constituting a permanent post of duty within the internal revenue district of such director) as provided in paragraph (a) of this section.

26 C.F.R. § 1.6091-2 (1997). The parties agree that since Allnutt's returns were "hand-carried" and he was a Maryland resident at the time, he was required to file his returns with the Baltimore "district director (or with any person assigned the administrative supervision of an area, zone or local office constituting a permanent post of duty within the internal revenue district of such director)." *See id.*

The Code does not define the term "file" or "filed." Courts have long held, however, that in order for returns to be considered "filed" for purposes of setting the period of limitations in motion, the returns must be delivered, in the appropriate form, to the *specific* individual or individuals identified in the Code or Regulations. *See Helvering v. Campbell*, 139 F.2d 865, 868 (4th Cir. 1944) (finding the filing of returns with the Philippine Collector under the Philippine income tax law insufficient to set the period of limitations running for purposes of the taxpayers' United States domestic taxes when the "statute required that [the] returns . . . be filed with the Collector at Baltimore"); *W.H. Hill Co. v. Commissioner of Internal Revenue*, 64 F.2d 506, 507 (6th Cir. 1933) (finding the delivery of a tax return to an internal revenue agent for forwarding to the IRS Commissioner not to constitute "filing" of the return with the Collector, as the statute required). Compliance with this requirement is vital so as to "apprise the proper tax official . . . of the liability of taxpayers for the federal income tax imposed upon them." *Helvering*, 139 F.2d at 868.

Thus, to prevail here, Allnutt first must demonstrate that he "*meticulously complied*" with the Code's and Regulation's requirement that he or his agent deliver his "hand-carried returns" *to the Baltimore district director or administrative supervisor*, not to some other individual regardless of his or her proximity to the prescribed person. *See Lucas*, 281 U.S. at 249; *Helvering*, 139 F.2d at 868; 26 C.F.R. § 1.6091-2 (1997). To avail himself of the protections of the statute of limitations, Allnutt must further show that he filed the returns in such a manner on or before March 6, 1997. *See* 26 U.S.C. § 6501 (requiring that taxes be assessed or a notice of deficiency issued within three years of the filing date).

The record before us and the findings of the Tax Court make clear that Allnutt cannot so demonstrate. Allnutt admits that his delivery of the original returns to the District Counsel's office did not constitute a filing. And, his delivery of the photocopied returns to the District Director's offices was anything but "meticulous." Allnutt never delivered the photocopied returns to District Director Harrington, his assistant, or even his office. Nor did he take the photocopied returns to the "Taxpayer Services" walk-in area in the District Director's office building as is standard practice for taxpayers attempting to file hand-carried returns. Rather, operating under the mistaken assumption that his returns had been filed earlier with the District Counsel's office, Allnutt left a sealed envelope containing his returns with an unidentified man of unknown title that he encountered in the hallway somewhere in the building. Instead of requesting a filing receipt, getting the returns date and time stamped, or recording that gentleman's name for his records, Allnutt merely hoped that the gentleman would keep his word and deliver the package to District Director Harrington.

Indeed, Allnutt admits that he forewent the careful, calculated procedures that he followed earlier with respect to the original returns at the District Counsel's Office because he never intended for the photocopied returns, dropped off only "as a courtesy," to be filed.[5] J.A. 218. Although, by happenstance, Allnutt's photocopied returns made their way from the stranger in the hallway to the IRS Philadelphia Service Center on May 9, 1997 and were ultimately processed, Allnutt is

---

[5]The Tax Court based its decision, in part, on Allnutt's admission that he "did not intend" for the photocopied returns with original signatures "to be his filed returns." *See Allnutt v. C.I.R.*, T.C.M. (RIA) 2002-311, 2002 WL 31875119, at *12-13 (2002). In support of this analysis, the court, and the government in its brief, cite to several cases, including *Florsheim Bros.*, 280 U.S. at 462. These cases do stand for the proposition that for a document to be considered a "return" for statute of limitations purposes, the taxpayer must "honestly and reasonably intend" for the document "to be a specific statement of the items of income, deductions, and credits *in compliance with [the Code]*," *Florsheim Bros.*, 280 U.S. at 462 (emphasis added). We decline to opine, however, as to whether these cases can be read as adding an intent element to the listed filing requirements in the Code and Regulations, as we find instead that Allnutt failed to meticulously comply with the *named* requirements thereof.

unable to demonstrate that these returns were actually delivered to the District Director on February 21, 1997 or on any date prior to March 6, 1997. In fact, we have no indication of the whereabouts of the returns from the time Allnutt delivered them to the unidentified gentlemen until they were postmarked on May 9, 1997.

In an attempt to now overcome his past lack of diligence with respect to his actual filing, Allnutt points to the initial Form 895 in his IRS file, listing the received date of his return as February 20, 1997 and the statute of limitations expiration date as February 20, 2000. This form, however, fails to carry the weight Allnutt lades upon it. First, as Allnutt admits and as is evident from the dates inscribed on the form, Blum (the IRS agent initially responsible for Allnutt's file) ascertained the February 20th received and expiration dates based upon Allnutt's self-declared date of signature on his returns, not from any other evidence that Allnutt delivered the returns directly to the District Director at that time. In fact, as Allnutt also admits, Blum used this date specifically because there were no other dates indicating when the returns had been filed. Furthermore, although the statute-of-limitation date on IRS internal documentation may be used as evidence of the appropriate filing date, contrary to Allnutt's intimation, the IRS is not bound by their own internal documents or self-imposed due dates. *See, e.g.*, *Smith v. C.I.R.*, T.C. Summ. Op. 2001-130, 2001 WL 1922722 (2001) (using Form 895 only as additional evidence of the tax return's received date when the actual postmarked return was also in evidence). Here, the IRS noticed the supposed error and changed the filing date to March 10, 1997—the only verified date available indicating when Allnutt's returns, original or photocopied, were actually received by an office affiliated with the Baltimore District Director. Allnutt provides no documentation demonstrating with any degree of certainty that his returns were filed prior to this date.

We are not wholly unsympathetic to Allnutt's plight, and cannot help but observe that the IRS could have obviated the problem here by proceeding more expeditiously. However, because statutes of limitation must be strictly construed in the government's favor and Allnutt is unable to prove that, on or before March 6, 1997, he meticulously complied with the Code and Regulation's requirements for filing his tax returns, we are unable to find that the government is barred from assessing and collecting Allnutt's considerable tax

deficiencies. Therefore, we conclude that the IRS's issuance of the notice of deficiency on March 6, 2000, less than three years from March 10, 1997, was timely.

## III.

For the foregoing reasons, the judgment of the Tax Court is

*AFFIRMED*.