T.C. Memo. 2008-127

UNITED STATES TAX COURT

WILLIAM R. KOHLER AND PATRICIA M. KOHLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18103-06L.                    Filed May 5, 2008.

William R. Kohler, pro se.

<u>William C. Bogardus</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:[1]  The petition in this case was filed in
response to a Notice of Determination Concerning Collection
Action(s) Under Section 6320 and/or 6330 (notice of

---

[1]This case was submitted to Judge Joseph H. Gale on Sept.
10, 2007.  The Chief Judge reassigned this case to Judge Julian
I. Jacobs on Mar. 11, 2008.

determination).[2] Pursuant to section 6330(d), petitioners seek our review of respondent's determination upholding the proposed levy to collect petitioners' income tax liability for tax year 1995. The issue for decision is whether respondent's proposed levy action may proceed.

## Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in the State of New York at the time they filed their petition.

Petitioners prepared a joint Form 1040, U.S. Individual Income Tax Return, for 1995 in which they reported $93,623 of adjusted gross income, $24,658 of tax, and $2,727 of withheld amounts, resulting in $21,931 of tax owed. The return, which was prepared with the assistance of a certified public accountant (C.P.A.), showed that William R. Kohler is an attorney and Patricia M. Kohler is a teacher. Petitioners' C.P.A. signed and dated the return September 27, 1997. The due date for petitioners' 1995 return, after extensions, was October 15, 1996.

In 2002 respondent advised petitioners that respondent had not received any tax return for tax year 1995 from them. In response, petitioners, on or about July 11, 2002, provided

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

respondent with a copy of their 1995 return.  Respondent assessed the tax shown on petitioners' 1995 return on December 9, 2002, and on the same day sent petitioners a letter advising them that they owed $51,275.86 in tax, additions to tax, and interest.

In their ensuing correspondence with respondent, petitioners did not explicitly state whether they had filed their 1995 return before July 11, 2002, and, if so, the date on which the return was filed.  Instead, they pointed out that the 1995 return they submitted in 2002 was a copy and requested that respondent advise them as to whether respondent had found their "original" return.

The parties stipulated that petitioners do not contest the balance due as shown on the 1995 return (i.e., $21,931) but rather assert that the balance due accompanied the return. Petitioners did not submit any evidence (such as a canceled check or bank record) to corroborate their claim that they filed their 1995 return before July 11, 2002, or paid the $21,931 balance due.  In this respect, petitioners repeatedly asserted in several letters to respondent:  "It should be noted that tax payments were made from an account which does not provide copies of cancelled checks to the customer.  Federal Regulation E does not require the retention for this long a period."  Petitioners did not aver that they did not have their own bank records from the relevant period, nor did petitioners submit any documentation

(such as correspondence with their bank) showing that they attempted to obtain their bank records.

In support of their claim that they paid their 1995 tax, petitioners informed respondent that they had contacted the State of New York Department of Taxation and Finance, evidently in 2002, and had been advised that their 1995 State of New York income tax return had been received by that office together with payment of the tax due to the State of New York. Petitioners averred (but offered no corroboration) that their 1995 Federal income tax return was attached to their 1995 State of New York income tax return.

Respondent's written communications to petitioners include: (1) Requests for clarification with respect to specific items on the return; (2) notification, on January 22, 2003, that respondent had removed the additions to tax for failure to file a timely return and failure to timely pay the tax "based solely on the fact that this was the first time you were required to file a return"; (3) notices and demands for payment; (4) a statement of account; and (5) assurance, on March 24, 2003, that respondent did not have any record of having received petitioners' 1995 return before 2002 and had no record of payment with respect to tax year 1995.

Petitioners, on March 23 and April 9, 2003, reiterated their claims and requested a conference with respondent's

representative.  No further action was taken until November 2004 when respondent resumed his solicitations for payment. Petitioners, in a letter dated December 2, 2004, reiterated their claims including their request for a conference with respondent. No further action or correspondence took place between the parties until November 2005 when respondent again solicited payment of petitioners' 1995 tax.  Petitioners, on December 7, 2005, once again reiterated their claims and requested a conference with respondent.  No further action or correspondence took place between the parties until February 20, 2006, when respondent issued a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice of intent to levy).  In response to respondent's letter, petitioners requested a hearing with respondent's Office of Appeals.  Pursuant to petitioners' request, a face-to-face hearing pursuant to section 6330 was held on July 12, 2006.

At their section 6330 hearing, petitioners reiterated all of the claims they had made in their correspondence and asserted that their 1995 return was timely filed and that their 1995 tax timely paid.  Petitioners did not explain how their 1995 return dated September 27, 1997, could have been timely.  According to petitioners, respondent's delay until 2002 in notifying them that respondent had not received their 1995 return resulted in their being unable to produce supporting bank records.  When

petitioners were asked how they could have failed to notice that the check they submitted in payment of Federal income tax had never been cashed, petitioners responded that they had not noticed the discrepancy "due to the fact that the account was linked to a securities account and that market fluctuations as well as debits determined net asset value balances."  Petitioners did not formally propose any collection alternative, nor did they request abatement of interest.  According to the notes of the hearing compiled by respondent's Appeals officer, petitioners indicated that they would petition this Court upon receipt of a notice of determination and would thereafter attempt to negotiate a settlement with respondent's Area Counsel.

On August 11, 2006, respondent issued a notice of determination sustaining the proposed levy.  The notice of determination states that petitioners provided no evidence that they filed a return for 1995 before submitting a copy of the 1995 return to respondent on July 11, 2002, and notes that petitioners did not file returns for any tax year from 1996 through 2002.

On September 6, 2006, petitioners timely petitioned this Court for review of respondent's determination, asserting that they never received a formal notice of assessment and that respondent unjustifiably failed to consider their alternative collection proposals.  Petitioners posit that the doctrine of laches prevents respondent from asserting his claim.

The parties stipulated that petitioners offered to compromise their dispute for $21,931 (the amount of tax shown as owed on the return but not the interest that respondent seeks to collect) in a letter to respondent's counsel dated July 12, 2007.

Discussion

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment. Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to any unpaid tax only after the Secretary has notified the person in writing of his intention to make the levy at least 30 days before any levy action is begun. Section 6330 elaborates on section 6331 and provides that upon a timely request a taxpayer is entitled to a collection hearing before the IRS Office of Appeals. Sec. 6330(a)(3)(B), (b)(1). A request for a collection hearing must be made within the 30-day period commencing on the day after the date of the section 6330 notice. Sec. 6330(a)(3)(B); sec. 301.6330-1(b)(1), Proced. & Admin. Regs.

If a section 6330 hearing is requested, the hearing is to be conducted by the Office of Appeals, and, at the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(b)(1), (c)(1). The taxpayer may raise at the hearing

"any relevant issue relating to the unpaid tax or the proposed levy".  Sec. 6330(c)(2)(A).

Section 6330(c)(2)(B) provides that a person may challenge "the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Petitioners did not receive a notice of deficiency for 1995 or otherwise have an opportunity to dispute their liability.  Therefore, petitioners are entitled to challenge the existence or amount of the 1995 tax liability.  See Landry v. Commissioner, 116 T.C. 60, 62 (2001).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection and take into account:  (i) The relevant issues raised by the taxpayer, (ii) challenges to the underlying tax liability by the taxpayer, where permitted, and (iii) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

Within 30 days after the Office of Appeals issues a notice of determination, the taxpayer may appeal the determination to the Tax Court if we have jurisdiction over the underlying tax

liability, sec. 6330(d)(1), as we do in the instant case.[3]  We review de novo respondent's determinations insofar as the existence or amount of the underlying liability is properly at issue.  See Davis v. Commissioner, 115 T.C. 35, 39 (2000); Goza v. Commissioner, 114 T.C. 176, 181 (2000).

Petitioners insist that they timely filed their 1995 return and that payment of their 1995 tax accompanied their return.[4]  Petitioners bear the burden of proving these claims.  See Rule 142(a).  They have failed to do so.

The copy of petitioners' 1995 return that was stipulated into evidence indicates that it was prepared by petitioners' C.P.A. on September 27, 1997, which is after the date the return was due.  Therefore, it is difficult to understand how this return could have been filed timely.

Respondent's records indicate that the 1995 return was filed on July 11, 2002 (after respondent notified petitioners that respondent had not received their 1995 return).  The record is devoid of any evidence that would permit us to conclude that

---

[3]We note that the Pension Protection Act of 2006, Pub. L. 109-280, sec. 855, 120 Stat. 1019, amended sec. 6330(d)(1) to provide that for determinations made after Oct. 16, 2006, the Tax Court has jurisdiction to review the Commissioner's collection activity regardless of the type of underlying tax involved.

[4]Because respondent abated the failure to timely file and failure to pay additions to tax, the timing of the filing of the return is relevant only insofar as it tends to establish whether and when payment of the tax was made and the point at which interest, if any, stopped accumulating.

respondent received but lost petitioners' return and alleged tax payment. We need not, and do not, accept petitioners' claim that they filed their 1995 return earlier than July 11, 2002. Further, without substantiation, we cannot accept petitioners' assertion that they paid the $21,913 balance of tax owed for 1995.[5]

We interpret petitioners' complaint that they did not receive a formal notice of assessment as a claim that respondent's Appeals officer, in sustaining the proposed levy action, did not verify that the requirements of any applicable law or administrative procedure were met as required by section 6330(c)(1).

Section 6201(a)(1) requires the Secretary to assess all taxes determined by the taxpayer as shown on the taxpayer's return. Section 6203 provides that such assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary and that upon request of the taxpayer the Secretary

---

[5]In their posttrial brief petitioners stated that they, "by contesting the underlying tax liability, ipso facto contested that any interest was due thereon." Because we find that petitioners have not shown that they paid their 1995 tax, it follows that they are liable for interest on their underpayment as provided in sec. 6601(a). Even if we construe petitioners' claim as one for abatement of interest under sec. 6404(h)(1), we do not have jurisdiction to consider it because petitioners did not make a claim to the Appeals officer that interest be abated or otherwise redetermined. See Giamelli v. Commissioner, 129 T.C. 107, 113 (2007).

shall furnish the taxpayer a copy of the record of the assessment.[6]  Section 6501(a) requires the tax to be assessed within 3 years after the return is filed.  We have found that petitioners failed to carry their burden of showing that their 1995 return was filed before July 11, 2002.  The parties stipulated into evidence respondent's Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, which shows that respondent received petitioners' 1995 return for the first time in July 2002 and that assessment of the tax shown on the return was made on December 9, 2002.  We and other courts have held that Form 4340 constitutes presumptive proof of a valid assessment.  Davis v. Commissioner, supra at 40 (and cases cited thereat).

Petitioners have cited no irregularities that would cast doubt on the reliability of the information recorded on Form 4340 with respect to their 1995 tax.  Therefore, we find that petitioners' 1995 tax was validly assessed.

In their petition, petitioners contend that respondent unjustifiably failed to consider their alternative collection

---

[6]Respondent assessed petitioners' 1995 tax on Dec. 9, 2002, and sent petitioners a notice and demand for payment on the same day.  Petitioners do not contend and the record does not show that they requested a copy of the record of the assessment of the 1995 tax which respondent failed to provide, nor do they cite any statutory authority for their claim that they were entitled to a "formal notice of assessment" beyond that provided for in sec. 6203.

proposals. The parties stipulated that at the hearing petitioners offered to pay $5,000 (or $10,000, according to the Appeals officer's notes) in satisfaction of their 1995 tax liability. They further stipulated that petitioners offered to settle their dispute for $21,931 (the amount of the tax shown as owed on the return but not the interest that respondent seeks to collect) in a letter to respondent's counsel dated July 12, 2007, but that no formal offer-in-compromise was submitted.

Section 7122(a) permits the Secretary to compromise any civil case arising under the internal revenue laws. Section 7122(c) requires the Secretary to prescribe guidelines for officers and employees of the IRS to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute. Compromises may be made on three grounds: (1) Doubt as to liability; (2) doubt as to collectibility; and (3) promotion of effective tax administration. This third ground is further divided between cases in which collection of the full liability would cause the taxpayer economic hardship and cases in which it would not. Sec. 301.7122-1(b), Proced. & Admin. Regs.

Petitioners do not articulate what might be the grounds upon which respondent would be permitted to compromise their liability, and they admit that they did not submit an offer-in-compromise as required by the applicable guidelines. On this sparse record, which is devoid of evidence concerning

petitioners' collection potential, we have no basis on which to find that any offer petitioners made was an acceptable amount. Therefore, we cannot find that respondent abused his discretion when he declined to accept petitioners' oral offer to extinguish their tax liability for $5,000 (or $10,000). In addition, we cannot find (insofar as the matter may be before us for review) that respondent abused his discretion by refusing petitioners' offer, contained in a letter to respondent's counsel following submission of their case, to pay $21,931 in satisfaction of their liability which, at the date of the notice of intent to levy, amounted to $44,537.91. Thus, we sustain respondent's determination in this regard.

Finally, we consider petitioners' claim that respondent is barred by laches from collecting their 1995 tax. Laches is an equitable doctrine which "prohibits a party from asserting a claim following an unreasonable delay by such party when there has been a change in circumstances during such delay which would result in severe prejudice against an opposing party should the claim be permitted." Tregre v. Commissioner, T.C. Memo. 1996-243, affd. without published opinion 129 F.3d 609 (5th Cir. 1997). It is well settled that the United States is generally not subject to the doctrine of laches in enforcing its rights. United States v. Summerlin, 310 U.S. 414, 416 (1940); Guaranty Trust Co. v. United States, 304 U.S. 126 (1938). Instead, the

"timeliness of government claims is governed by the statute of limitations enacted by Congress." <u>Fein v. United States</u>, 22 F.3d 631, 634 (5th Cir. 1994).[7] Moreover, statutes of limitation are strictly construed in favor of the Government where limitation is sought to bar the rights of the Government. <u>Allnutt v. Commissioner</u>, __ F.3d __ (4th Cir., April 23, 2008), affg. T.C. Memo. 2002-311.

Section 6502(a)(1) provides that where the tax has been timely assessed, it may be collected by levy if the levy is made within 10 years after the assessment. Respondent timely assessed petitioners' 1995 tax on December 9, 2002, and issued his final notice of intent to levy on February 20, 2006, well within the 10-year period of section 6502(a)(1). Therefore, the periods of limitations of sections 6501 and 6502 did not operate to prevent respondent from pursuing a levy action against petitioners.

Respondent's determination that the Federal tax levy was appropriate is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[7]While it is the IRS's policy to notify taxpayers when they have not timely filed returns, the IRS has no statutory obligation to do so. <u>Grandelli v. Commissioner</u>, T.C. Memo. 2008-55.