DAVID S. CAULKINS AND JANET V. CAULKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Caulkins v. Commissioner
Docket No. 30859-81.
United States Tax Court
T.C. Memo 1984-504; 1984 Tax Ct. Memo LEXIS 169; 48 T.C.M. (CCH) 1182; T.C.M. (RIA) 84504; September 20, 1984; as Amended October 3, 1984 *169 On December 21, 1978, P purchased a 20 percent interest in a number of computers; on the same day he leased the computers to C, which in turn subleased the computers to others.P claimed a 1978 depreciation deduction for the computers using the half year convention but failed to file an election to depreciate the computers under the class life asset depreciation range system. P claimed that the failure to file the election was due to an oversight by his tax preparer. Respondent disallowed the entire depreciation deduction taken by P for 1978 for the computers on the basis that P failed to prove the computers were placed in service in 1978. Held: The computers were placed in service by P on December 21, 1978. Held further: The failure to file the election to depreciate the computers under the class life asset depreciation range system precludes P from using the half year convention. David S. Caulkins and Janet V. Caulkins, pro se. Gregory A. Mazza and Powell W. Holly, Jr., for the respondent. JACOBS MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1978 in the amount of $2,623. The basis of the deficiency *170 is the disallowance of a depreciation deduction claimed for an interest in computers purchased by petitioner David S. Caulkins on December 21, 1978. The issues for decision are (1) whether the computers purchased by petitioner David S. Caulkins on December 21, 1978, were placed in service in 1978, and (2) if the resolution of the first issue is in the affirmative, whether the petitioners may compute the 1978 depreciation deduction by using the half year convention. FINDINGS OF FACT The facts have been fully stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of their petition, the petitioners, David S. Caulkins and his wife Janet V. Caulkins (a management consultant and an editor respectively), resided in Old Greenwich, Connecticut. Since the depreciation deduction here at issue relates to an interest in computers acquired by David, and since Janet is a party only by virtue of having filed a joint return with David, David singularly hereinafter will be referred to as petitioner. *171 On December 21, 1978, petitioner purchased from Brookroad Financial Corporation (Brookroad) a 20 percent interest in a number of computers that were located in West Germany. The purchase price for the petitioner's interest in the computers was $244,000, $4,000 of which was paid in cash at the time of purchase. The deferred balance of $240,000 was evidenced by two promissory notes, one a recourse note for $30,000 and the other a limited recourse note for $210,000. The Bill of Sale and the Purchase Agreements both contained general disclaimers of warranty of fitness. [1] *172 On the same day that petitioner purchased his 20 percent interest in the computers, he agreed to lease the computers to CIG Computers, GmbH ("CIG"), a West German corporation, which in turn subleased the computers to three other West German companies. Although the record is vague, we infer that there is some relationship of ownership between Brookroad and CIG, the exact nature of which is unclear. The amount of lease payments due petitioner was slightly greater than the amount of payments that petitioner was required to make under the limited recourse note. The due dates of payment under both the lease and note were the same (both required semiannual payments on June 30th and December 31st), and the lease expiration date and the note maturity date were the same (December 31, 1987). In a letter dated March 14, 1979, from the law firm of Bandler & Kass, petitioner received tax advice with respect to the purchase and leasing *173 of the computers, including the permissibility of utilizing the class life and asset depreciation range (CLADR) system to compute depreciation for the computers and the availability of the half year and modified half year convention. The petitioner was admonished to consult his own tax preparer regarding the making of the required election. On their tax return for 1978, petitioners claimed a $13,889 depreciation deduction for the computers, representing one half year's straight line depreciation, computed by using a basis of $250,000, [2] *174 a useful life of 9 years and an acquisition date of July 1, 1978. Petitioners reported no rental income for 1978 from the lease of the computers. Petitioners did not file (with their return) an election to depreciate the computers under CLADR. OPINION In instituting this proceeding, petitioners dispute respondent's complete disallowance of the 1978 depreciation deduction taken for the computers. Respondent's denial of the deduction was based on his determination that the computers were not placed in service by petitioner in 1978. Alternatively, respondent contends that even if petitioners are entitled to a depreciation deduction in 1978, they may not compute the deduction by using the half year convention because they failed to make an election to depreciate the computers under the class life asset depreciation range (CLADR) system. [3] I. Placed in Service Requirement.
Section 167(a)(2)[4] allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, tear, and obsolescence of property held for the production of income. As a general *175 rule, the period for depreciation of an asset begins when the asset is placed in service. Sec. 1.167(a)-10(b), Income Tax Regs. An asset is ordinarily deemed to be placed in service when it is in a condition or state of readiness and availability for a specifically assigned function for the production of income. Sec. 1.167(a)-11(e)(1). Respondent disallowed the entire depreciation deduction claimed by the petitioners for 1978 for the computers on the basis that they failed to prove that the computers were placed in service in 1978. Respondent relies on the presumptive correctness of his determination and the fact that the petitioners have the burden of proving him wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The presumptive correctness of the Commissioner's determination disappears once evidence is introduced to support a contrary finding. Niederkrome v. Commissioner,266 F.2d 238 (9th Cir. 1958). The parties introduced into evidence a letter from an officer of Computer Investor Group, Inc.[5] confirming *176 that the computers purchased by petitioner were placed in service in 1978. This letter and the Lease Agreement together provide sufficient unrefuted evidence that supports our finding that the computers were placed in service on December 21, 1978. [6]
The respondent argues next that in 1978 the computers were not in "a condition or state of readiness and availability" since the Bill of Sale and the Purchase Agreement both disclaim any warranties of fitness. Respondent's position ignores the tax-independent business exigencies that dictate the use of such disclaimers in commercial transactions. Further, contract provisions are not determinative as to whether or not the computers were actually placed in service in 1978. II. The availability of the half year convention.
Having found that the computers were placed in service on December 21, 1978, we must now determine the amount of depreciation allowable as a deduction in 1978. The Amount allowable depends upon whether or not the petitioners may avail themselves of the half year convention. *177 As previously stated, the period for depreciation of an asset generally begins whenan asset is first placed in service. Sec. 1.167(a)-10(b), Income Tax Regs.In the year that a taxpayer first places a depreciable asset in service, the deduction under section 167 generally is limited to that proportionate part of one year's depreciation for the part of the year during which the asset is actually in service. There are two exceptions to this general rule. The first exception allows a taxpayer to use either a half year or a modified half year convention where the taxpayer properly elects depreciation based on CLADR. Sec. 1.167(a)-11(a)(1), Income Tax Regs. The second exception allows the use of an "averaging convention." Sec. 1.167(a)-10(b), Income Tax Regs.
CLADR is a statutorily authorized depreciation system. [7] Where CLADR is elected, all eligible property placed in service during the taxable year is placed in closed-end depreciation accounts known as vintage accounts. Each vintage account consists of anasset, or group of assets, within the same asset guideline class. An asset guideline class is that category of assets for which a separate asset guideline period is in effect *178 for the taxable year. The asset guideline class and the asset guideline period for 1978 are set forth in Rev. Proc. 77-10, 1977-1 C.B. 548. For each asset guideline class, an asset depreciation range (ADR) is provided. The ADR is a period of years which extends from 80 percent to 120 percent of the asset guideline period. The allowance for depreciation of a vintage account is determined by using (a) ADR, (b) one of two possible conventions, and (c) one of the permitted depreciation *179 methods (i.e., straight line, sum of the years-digits or declining balance methods).One of these conventions, the half year convention, assumes that all property in the vintage account is placed in service on the first day of the second half of the taxable year.Under the other convention, the modified half year convention, all property in the vintage account actually placed in service during the first half of the taxable year is deemed placed in service on the first day of the taxable year, and all property in the account actually placed in service during the second half of the year is deemed placed in service on the first day of the succeeding year. The election of CLADR is optional with the taxpayer and must be made annually. Where CLADR is elected, the taxpayer must maintain books and records that contain eight prescribed items of information. Sec. 1.167(a)-11(f)(4), Income Tax Regs.[8] *180 *181 In addition to the record keeping requirement, the taxpayer assumes the burden of reporting certain information. The regulations provide guidance regarding the time and manner for making the election. Specifically, the regulations require that the election be made either with a timely income tax return or, in the case of a late return, with the first return for the year the equipment is first placed in service. Sec. 1.167(a)-11(f)(1)(i). The form [9] used to make the election must provide the Internal Revenue Service with ten items of information (nine of which are relevant to petitioners). [10] *182 *183 The benefits of CLADR are only available where the proper election is made. Sec. 1.167(a)-11(b)(5), Income Tax Regs. The election, if not made in the time and manner prescribed, may not be made at any other time with respect to property placed in service in that taxable year. Section 1.167(a)-11(f)(1)(i), Income Tax Regs.
Although the requisite Form 4832 was not filed, petitioner argues that (a) he is nonetheless entitled to use the half year convention because the election is a technicality with which he would have complied had he known about it, (b) he intended from the start to make the elction, and (c) his intent is apparent from his return. He also argues that the error was that of his tax preparer and that he should not be held responsible for such an oversight. None of these arguments *184 excuse noncompliance with the regulations. The filing required is no mere technicality. The regulations are administrative directives promulgated by the Commissioner. Among its basic purposes is the facilitation of the full and fair collection of revenue. When transactions extend over a number of years (as do depreciation accounts) and tax benefits have been conferred in the early years, it is necessary for the Internal Revenue Service to be able to trace the history of these transactions to ensure compliance with the law. We do not accept petitioner's argument that his intentions are apparent from his return. Nothing in the return suggests that petitioner maintained vintage accounts, selected an asset depreciation period, or specified a half year convention. In his return, he simply reported the acquisition date of the computers as being July 1, 1978 when in fact they were acquired on December 21, 1978. To report an acquisition date other than the actual acquisition date without any other mention of a convention or asset depreciation period is no substitute for the prescribed election process. [11]
For this court to permit the *185 petitioner to disregard the regulations, we would have to find the regulations unreasonable or plainly inconsistent with the statute, Commissioner v. South Texas Lumber Co.,333 U.S. 496 (1948). This we are not prepared to do. While this court sympathizes with petitioner's unfortunate predicament that, in the petitioner's words, is due to the "oversight" of his tax preparer, fundamental agency law provides that the actions of the tax preparer (agent) are imputed to the taxpayer (principal). Petitioners signed and thereby adopted the return. We cannot excuse them from compliance with the statute and regulations. [12]
Petitioner would have this court rely on letter ruling 8025018 as precedent to excuse him for his tax preparer's error. Aside from the fact that letter rulings have no precedential value, Minchin v. Commissioner,335 F.2d 30 (2d Cir. 1964), it provides no support for petitioner's argument. In that letter ruling, the Commissioner *186 exercised his discretion to extend a taxpayer's time to make the election permitting a lessee to claim the taxpayer/lessor's investment tax credit on the leased property. Such an extension is a purely discretionary grant by the Commissioner. [13] *187 The taxpayer involved therein requested it within a reasonable time after the deadline for the extension had passed and good cause existed for granting the extension. In the instant case, petitioner never made a request for an extension to file his election. The closest he came was a letter he wrote in 1980 to the District Director expressing his intention to have made the proper election. Petitioner failed to show good cause to justify the extension.[14] *188 *189 He simply alleges the oversight of his tax preparer as the cause of his delinquency. Yet he had received written tax advice one month prior to filing his return that should have alerted him to the need for the election and maintenance of vintage accounts but took no appropriate action Thus, we conclude that petitioner may not employ CLADR and consequently may not utilize the associated half year convention The second exception to the general rule limiting the depreciation deduction in the first year to the point in time that an asset is actually placed in service is the averaging convention. Section 1.167(a)-10(b), Income Tax Regs. This is utilized in the case of a multiple asset account, which includes assets that are placed in service and retired throughout the year, to simplify the accounting procedures. The effect is to average the timing of additions to and deletions from this account. This convention, however, is proscribed when large and unusual purchases would have the clear effect of substantially distorting the depreciation *190 allowance for the year. See Rev. Rul. 73-202, 1973-1 C.B. 81. Petitioner not only does not have a multiple asset account, but were he permitted to use the averaging convention for his "single" asset account, he would be claiming 16.5 times more depreciation than if he were taking depreciation for the actual number of days that the computers were in service. [15] This is clearly distortive, and hence can not be permitted. Accord Helfand v. Commissioner,T.C. Memo 1984-102. Since we have found that the petitioner placed the computers in service on December 21, 1978, and in view of our holding that petitioner may not claim the benefits of CLADR or the averaging convention, he will be allowed a depreciation deduction for 1978 for that part of the year in which the computers were in active service, that is, the final eleven days of 1978. To reflect the above, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Darrell D. Wiles to Judge Julian I. Jacobs↩.
1. The Bill of Sale, in relevant part, provided as follows: Seller does not, except as set forth above, warrant the equipment in any respect, either expressly or by implication and without limiting the generality of the foregoing, seller expressly disclaims any implied warranty of merchantability, fitness or adequacy for any purpose or use, quality, productiveness or capacity of said equipment. The Purchase Agreement, in relevant part, provided as follows: Section 3.3 Disclaimer of Warranties. The equipment is being sold hereunder "as is" and "where is". Accordingly, except as expressly set forth herein, the seller makes no representations or warranties, express or implied, as to any matter whatsoever, including, without limitation, the condition of the equipment, its merchantability, its fitness for any particular purpose or with respect to patent infringement or the like.
2. Although petitioner made no effort to explain why he is claiming a depreciable basis of $250,000 when he shows a cost of only $244,000, it is possible to piece together from the evidence justification for such a basis. As an exhibit, petitioner included a copy of a cancelled check for $6,000 made to Freyer Corp. on December 21, 1978. Freyer Corp. is described as the agent for petitioner in this transaction. Presumably, the $6,000 paid to Freyer was a sales commission or a leasing cost which petitioner added to the $244,000 purchase price in computing his basis.
3. If the petitioners are entitled to use the half-year convention, they can depreciate the computers as of July 1, 1978, rather than as of December 21, 1978 (the date petitioner purchased his interest in the computers).↩
4. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during 1978. All rule references are to the Tax Court Rules of Practice.↩
5. Computer Investor Group, Inc. apparently guaranteed the lease payments by CIG to petitioner.↩
6. Cf. Helfand v. Commissioner,T.C. Memo 1984-102↩.
7. Section 167(m)(1) provides: In the case of a taxpayer who has made an election under this subsection for the taxable year, the term "reasonable allowance" as used in subsection (a) means (with respect to property which is placed in service during the taxable year and which is included in any class for which a class life has been prescribed) only an allowance based on the class life prescribed by the Secretary which reasonably reflects the anticipated useful life of that class of property to the industry or other group. The allowance so prescribed may (under regulations prescribed by the Secretary) permit a variance from any class life by not more than 20 percent (rounded to the nearest half year) of such life.↩
8. Sec. 1.167(a)-11(f)(4), Income Tax Regs., provides as follows: (4) Special conditions to election to apply this section - (i) Maintenance of books and records. The taxpayer may not elect to apply this section for a taxable year unless the taxpayer maintains the books and records required under this section. In addition to any other information required under this section, the taxpayer's books and records must specify - (a) The asset depreciation period selected by the taxpayer for each vintage account; (b) If the taxpayer applies the modified half-year convention, the total cost or other basis of all eligible property first placed in service in the first half of the taxable year and the total cost or other basis of all eligible property first placed in service in the last half of the taxable year; (c) The unadjusted basis and salvage value for each vintage account, and the amount, if any, by which gross salvage value was decreased under section 167(f); (d) Each asset guideline class for which the taxpayer elects to apply the asset guideline class repair allowance described in paragraph (d)(2)(iii) of this section; (e) The amount of property improvement, determined under paragraph (d)(2)(vii)(a) of this section, for each asset guideline class for which the taxpayer elects to apply the asset guideline class repair allowance; (f) A reasonable description of property excluded from an election to apply this section and the basis for the exclusion; (g) The total unadjusted basis of all assets retired during the taxable year from each asset guideline class, and the proceeds realized during the taxable year from such retirements; and (h) The vintage (that is, the taxable year in which established) of the assets retired during the year from each asset guideline class.↩
9. Form 4832 is provided for such a purpose but need not be used as long as the information is submitted in accordance with it. Sec. 1.167(a)-11(f)(2). ↩
10. Sec. 1.167(a)-11(f)(2), Income Tax Regs., provides as follows: (2) Information required. A taxpayer who elects to apply this section must specify in the election: (i) That the taxpayer makes such election and consents to, and agrees to apply, all the provisions of this section; (ii) The asset guideline class for each vintage account of the taxable year; (iii) The first-year convention adopted by the taxpayer for the taxable year of election; (iv) Whether the special 10 percent used property rule described in paragraph (b)(5)(iii) of this section has been applied to exclude used property from the election; (v) Whether the taxpayer elects to apply the asset guideline class repair allowance described in paragraph (d)(2)(iii) of this section; (vi) Whether the taxpayer elects for the taxable year to allocate the adjusted basis of a special basis vintage account in accordance with paragraph (d)(3)(vi) of this section; (vii) Whether any eligible property for which the taxpayer was not required or permitted to make an election was excluded because of the special rules of paragraph (b)(5)(v) or (6), or paragraph (e)(3)(i) or (iv) of this section; (viii) Whether any "section 38 property" was excluded under paragraph (b)(5)(iv) of this section from the election to apply this section; (ix) If the taxpayer is an electric or gas utility, whether the taxpayer elects to apply this section on the basis of a composite asset guideline class in accordance with paragraph (b)(4)(iii)(a) of this section; and (x) Such other information as may reasonably be required. . . . An election to apply this section will not be rendered invalid under this subparagraph so long as there is substantial compliance, in good faith, with the requirements of this subparagraph.↩
11. Cf. Regan v. Commissioner,T.C. Memo 1982-733↩.
12. If petitioner has any quarrel at all, it is with his tax preparer. We note, however, that petitioner was not entirely unaware of the need for an election, as he had received the March 14, 1979 letter from Bandler & Kass prior to filing his 1978 return.↩
13. Sec. 1.9100-1, Income Tax Regs. Extension of time for making certain elections. (a) In general. The Commissioner in his discretion may, upon good cause shown, grant a reasonable extension of the time fixed by the regulations in this chapter for the making of an election or application for relief in respect of tax under subtitle A of the Code provided- (1) The time for making such election or application is not expressly prescribed by law; (2) Request for the extension is filed with the Commissioner before the time fixed by the regulations for making such election or application, or within such time thereafter as the Commissioner may consider reasonable under the circumstances; and (3) It is shown to the satisfaction of the Commissioner that the granting of the extension will not jeopardize the interests of the Government.↩
14. Rev. Proc. 79-63, Sec. 4, 1979-2 C.B. 578suggests factors which will be taken into consideration in determining whether good cause for granting the extension, as permitted by Sec. 1.9100-1, Income Tax Regs., has been shown. They are: (1) Due diligence of the taxpayer.--What action, if any, did the taxpayer take to determine the existence of and requirements for the election or application? In this regard, did the taxpayer consult an attorney or accountant knowledgeable in tax matters or communicate with a responsible employee of the Service? Further, that action, if any, did the taxpayer take to make the election or application? (2) Prompt action by the taxpayer.--Is the taxpayer requesting the extension within a reasonable time after discovering a deadline that could not be met or, alternatively, within a reasonable time after discovering a deadline that has already passed? Was the discovery made within a reasonable time after passage of the deadline? Did the taxpayer take reasonable action under all the circumstances to dead promptly with a missed deadline? (3) Intent of the taxpayer.--Did the taxpayer intend to make the election or application on time? If the taxpayer knew of the election or application, was the taxpayer's failure to elect or apply on thim due to mere inadvertence or to significant intervening circumstance beyond the taxpayer's control? Have the taxpayer's actions been consistent with the intent to make the particular election or application or has the taxpayer taken action inconsistent with the intent to make the particular election or application? (4) Prejudice to the interests of the Government.--Would granting the extension neither prejudice the interests of the Government nor cause undue administrative burden?For example, has the taxpayer used or had the opportunity to use hindsight to the Government's prejudice by actions based on knowledge of events occuring after the time when the taxpayer would have had to act in order timely to make the election or application? (5) Statutory and regulatory objectives.--Would granting the extension be consistent with the objectives of the underlying statute and the regulatory election or application provision?↩
15. Petitioner had the computers in service for only eleven days in 1978. Were he to take depreciation from July 1, 1978, he would be claiming depreciation for over 182 days.↩