155 T.C. No. 7

UNITED STATES TAX COURT

ROBIN J. FOWLER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12810-18.                        Filed September 9, 2020.

P efiled his 2013 tax return on October 15, 2014, which R's
software reviewed and rejected for failure to include an Identity
Protection Personal Identification Number (IP PIN). P refiled his
2013 tax return with an IP PIN on April 30, 2015; R's software
reviewed and accepted the return. Thereafter, R sent P a notice of
deficiency for the 2013 tax year on April 5, 2018.

R moved for partial summary judgment, and P cross-moved for
summary judgment, on whether R issued a timely notice of
deficiency. The parties dispute whether P's first submission triggered
the I.R.C. sec. 6501(a) limitations period.

Held: P's first submission triggered the running of the I.R.C.
sec. 6501(a) limitations period, notwithstanding P's omission of an IP
PIN.

Held, further, R's motion for partial summary judgment will be
denied, and P's cross-motion for summary judgment will be granted.

David D. Aughtry and Patrick J. McCann, Jr., for petitioner.

Joel D. McMahan and A. Gary Begun, for respondent.

OPINION

GREAVES, Judge:  This case is before the Court on respondent's motion for partial summary judgment and petitioner's cross-motion for summary judgment under Rule 121.[1]  The issue for decision is whether as a matter of law the limitations period for petitioner's 2013 Federal income tax return expired before respondent mailed the notice of deficiency.  We hold that it did, and therefore we will grant petitioner's motion for summary judgment and deny respondent's motion for partial summary judgment.

Background

The following facts are undisputed and drawn from the parties' motion papers and the attached declarations and exhibits, unless otherwise stated. Petitioner resided in Florida when he filed the petition.

---

[1]Unless otherwise noted, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1986 (Code), as amended.

On or before April 15, 2014, petitioner timely filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, extending the due date to file his 2013 Form 1040, U.S. Individual Income Tax Return, until October 15, 2014.  Thereafter, petitioner submitted his 2013 Form 1040 to respondent on October 15, 2014, October 28, 2014, and April 30, 2015. Each 2013 Form 1040 contained the same information to calculate tax liability; however, respondent accepted only the final submission.

First Submission

Petitioner efiled the 2013 Form 1040 on October 15, 2014 (October 15 submission).  Petitioner electronically signed (e-signed) Form 8879, IRS e-file Signature Authorization, to authorize Bennett Thrasher, LLP, a certified public accountancy firm, to file a return on his behalf in its capacity as an electronic return originator (ERO).[2]  Jeffrey J. Call, a partner at Bennett Thrasher, e-signed the 2013 Form 1040 with a Practitioner Personal Identification Number (PIN) and

---

[2]The Form 8879 is not submitted with the return, but taxpayers are instructed to keep the form for their records.  An ERO is a firm accepted to participate in the Internal Revenue Service (IRS) efile program that originates the submission of electronic returns to the IRS.  IRS Publication 1345, Handbook for Authorized IRS e-file Providers of Individual Income Tax Returns (Rev. 4-2014), at 49, 51 (hereinafter Pub. 1345).

transmitted it directly to respondent on October 15, 2014.[3] Mr. Call received a Submission ID, a "globally unique 20 digit number assigned to electronically filed tax returns". Pub. 1345, at 56. Respondent's software received the October 15 submission that same day and sent Mr. Call a rejection notice, citing code "IND-181" for failure to provide a valid Identity Protection Personal Identification Number (IP PIN) with the efiled return.[4]

Second Submission

Petitioner again submitted a 2013 Form 1040 on October 28, 2014 (October 28 submission). Mr. Call prepared a paper 2013 Form 1040 with the same information as the October 15 submission, and petitioner used DocuSign to sign

---

[3]The 2013 Form 1040 Instructions state that taxpayers must input a PIN to sign an efiled return. 2013 Form 1040 Instructions, at 73. The PIN is a random set of five numbers selected by either the taxpayer (Self-Select PIN) or the preparer (Practitioner PIN). Id.

[4]Respondent notes that the IRS typically issues IP PINs to taxpayers who have been victims of identify theft. Petitioner acknowledges that his identity was compromised in 2013. According to his records, respondent sent petitioner an IP PIN on December 30, 2013; however, petitioner claims he did not receive the IP PIN before making the October 15 submission. We assume for purposes of this Opinion that respondent sent and petitioner received the IP PIN before the October 15 submission. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992) (explaining that we construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate), aff'd, 17 F.3d 965 (7th Cir. 1994).

the jurat.[5]  On October 28, 2014, Bennett Thrasher mailed the 2013 Form 1040 with petitioner's DocuSign signature stamp to the IRS Service Center in Austin, Texas, via U.S. Postal Service (USPS) Certified Mail with Return Receipt.  The USPS delivered the October 28 submission to the IRS on October 30, 2014.  The return receipt confirms that an IRS employee, Sandra Douds, signed for the package.  Petitioner received a letter in December 2014 notifying him that the IRS had not received his 2013 return.

Third Submission

Mr. Call efiled a 2013 Form 1040 on behalf of petitioner a third time on April 30, 2015 (April 30 submission).  Petitioner obtained an IP PIN from the IRS on or before April 30, 2015, and it was included in the April 30 submission.  With the exception of the IP PIN, the tax information in the April 30 submission was identical to the information in the first and second submissions.  The IRS' software reviewed and accepted the April 30 submission on the same day.

Respondent issued a notice of deficiency for the 2013 tax year to petitioner on April 5, 2018.[6]  Thereafter, petitioner filed a petition in this Court challenging

---

[5]The jurat is the clause at the end of the return where the taxpayer declares under penalties of perjury that the information in the return is true and correct.

[6]Petitioner did not consent to extend the limitations period for assessing additional tax for the 2013 tax year.

the notice of deficiency. Petitioner raised the affirmative defense of the statute of limitations, see Rule 39, in a timely filed amendment to the petition.

## Discussion

I. Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant a motion for summary judgment, or partial summary judgment regarding an issue, when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. & Subs. v. Commissioner, 118 T.C. 226, 238 (2002). Furthermore, we construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

The sole question presently before the Court is whether either of the first two submissions triggered the running of the three-year limitations period under section 6501(a). Both parties filed motions for summary adjudication of this issue, and the parties agree that the material facts are not in dispute. We find that the issue may appropriately be resolved summarily.

II.     Analysis

Section 6501(a) generally requires that the IRS assess tax within three years after the taxpayer filed his or her return.[7]  This three-year period begins on the due date of the return if it is timely filed or on the actual filing date if the return is filed late.  See sec. 6501(b)(1).  The statute of limitations on assessment is "an almost indispensable element of fairness as well as of practical administration of an income tax policy."  Rothensies v. Elec. Storage Battery Co., 329 U.S. 296, 301 (1946).  It assures taxpayers who file honest returns that after that period their tax liabilities will not be reopened.  Mabel Elevator Co. v. Commissioner, 2 B.T.A. 517, 519 (1925).

The filing of a return commences the running of the limitations period if (1) the document that the taxpayer submitted was a required return, and (2) the taxpayer properly filed the return.  Appleton v. Commissioner, 140 T.C. 273, 284 (2013); see also Vento v. Commissioner, 152 T.C. 1, 15 (2019) (Thornton, J., concurring) ("But whether the returns were properly filed is a separate question from whether the documents were returns in the first instance."), supplementing 147 T.C. 198 (2016).  Each requirement provides a check on the other.  For

_____

[7]Exceptions apply to this rule; however, the parties do not argue, and the Court does not find, that any applied in the present case.

example, a taxpayer cannot trigger the statute of limitations by properly filing a document that lacks sufficient information to calculate tax liability or by submitting a required return to the wrong IRS Service Center.  See, e.g., Winnett v. Commissioner, 96 T.C. 802, 808 (1991) (finding that a return sent to the wrong IRS Service Center was not filed until it was delivered to the correct IRS Service Center); Houston v. Commissioner, 38 T.C. 486, 491 (1962) (finding that a letter listing total income, but omitting other items necessary to calculate tax liability, was not a section 6501(a) "return").

We first consider whether the October 15 submission was a "required return" and "properly filed".  If it failed either prong, we will then consider the October 28 submission.[8]

A.    Required Return

Section 6501(a) explains that "the term 'return' means the return required to be filed by the taxpayer".  Neither the statute nor the regulations thereunder expand on this definition.  Given the lack of regulations, this Court generally relies on the test in Beard v. Commissioner, 82 T.C. 766, 777 (1984), aff'd, 793

---

[8]Respondent contends that petitioner did not execute the October 28 submission under penalties of perjury because DocuSign was not an approved signature method on the 2013 Form 1040.  We do not need to decide this issue because we conclude that the October 15 submission triggered the statute of limitations.

F.2d 139 (6th Cir. 1986), to determine whether a document constitutes a return. See Hulett v. Commissioner, 150 T.C. 60, 81 (2018) ("Beard has become the go-to case to answer * * * [whether information received constitutes a return.]"). The Beard test requires that: (1) the document purport to be a return and provide sufficient data to calculate tax liability, (2) the taxpayer make an honest and reasonable attempt to satisfy the requirements of the tax law, and (3) the taxpayer execute the document under penalties of perjury.

### 1. Purports To Be a Return and Provides Sufficient Information

We readily conclude that the first requirement of the Beard test is satisfied. The October 15 submission purports to be a return as it included a 2013 Form 1040. See Hulett v. Commissioner, 150 T.C. at 89 ("The IRS wants returns on the forms it prescribes, and it got that form--at least a good part of it--here."). Furthermore, the parties do not dispute that the October 15 submission reported petitioner's gross income, deductions, credits, and resulting net taxable income. See id. at 86-87.

### 2. Honest and Reasonable Attempt To Comply With the Law

We next consider whether petitioner made an honest and reasonable attempt to comply with the tax law. A taxpayer need not file a perfect return to start the limitations period. Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180 (1934).

Rather, the return must only appear reasonable on its face. Hulett v. Commissioner, 150 T.C. at 89 (citing Colsen v. United States (In re Colsen), 446 F.3d 836, 840 (8th Cir. 2006)). This requirement distinguishes a tax protester "zero return" (e.g., a document purporting to be a return that contains only zeros on the relevant lines) from a return that on its face shows an attempt to properly report income and deductions. Id. at 90. A taxpayer's state of mind is immaterial. Id. at 89. As a result, even a fraudulent return may satisfy this requirement if it appears genuine on its face. Badaracco v. Commissioner, 464 U.S. 386, 396-397 (1984) (finding that a taxpayer's original and fraudulent returns were still "returns").

The October 15 submission appears to be an honest and reasonable attempt to comply with the tax laws. The submission included inputs for income, deductions, exemptions, and credits along with supporting documentation and schedules. The only difference between the October 15 submission (which respondent rejected) and the April 30 submission (which respondent accepted) is that the October 15 submission did not include an IP PIN. The fact that petitioner failed to include an IP PIN on the October 15 submission does not put the return in the "tax protester" category, particularly since respondent does not explain why the IRS automatically rejects an efiled return, but not a paper return, without a

correct IP PIN.  See infra note 9.  Respondent does not cite any other omission or error that would cause us to find that petitioner did not make an honest and reasonable attempt to comply with the law.  Accordingly, we conclude that the October 15 submission satisfied this requirement.

### 3.     Executed Under Penalties of Perjury

The final requirement under the Beard test, which echoes sections 6061 and 6065, is that the taxpayer execute the document under penalties of perjury.  Here lies the primary dispute between the parties.  Congress granted the Secretary specific authority to prescribe forms or regulations defining the signature method for any return, see sec. 6061(a), and to develop procedures for the acceptance of signatures in digital or other electronic form, see sec. 6061(b)(1).  Respondent argues that the October 15 submission failed to satisfy the signature requirement because it did not include an IP PIN.  This argument does not persuade us because the IP PIN is separate from the signature guidance the Secretary has issued.

Despite the authority delegated in section 6061, there is little regulatory guidance as to what constitutes a valid signature.  Section 1.6061-1(a), Income Tax Regs., provides only that each individual "shall sign" his income tax return.  Section 1.6695-1(b)(2), Income Tax Regs., directs a signing tax return preparer to "electronically sign the return in the manner prescribed by the Commissioner in

forms, instructions, or other appropriate guidance." We therefore look to the instructions to the 2013 Form 1040 itself. Under the heading "IRS e-file: Electronic Return Signatures!", the instructions state that the taxpayer "must sign the return electronically using a personal identification number (PIN)", either a Self-Select PIN or a Practitioner PIN. 2013 Form 1040 Instructions, at 73 (emphasis added). Here, Mr. Call included a Practitioner PIN on petitioner's efiled return in accordance with the instructions.

Notwithstanding the foregoing instructions, respondent now argues that the IP PIN is part of the signature requirement. Because we find no IRS guidance characterizing an IP PIN as a signature, we disagree. See Appleton v. Commissioner, 140 T.C. 273, 287 & n.18 (2013) (finding that taxpayer may rely on an explicit instruction to Form 1040 that bears on the sec. 6501(a) statute of limitations if a meticulous taxpayer would not find conflicting instructions in other IRS guidance). Just as taxpayers must comply with instructions referenced on IRS forms, see Estate of Merwin v. Commissioner, 95 T.C. 168, 180 (1990), the IRS cannot disavow the 2013 Form 1040 instructions to accommodate its litigation stance, see Wilkes v. United States, 50 F. Supp. 2d 1281, 1287 (M.D. Fla. 1999), aff'd, 210 F.3d 394 (11th Cir. 2000). In this case, whereas the 2013 Form 1040 Instructions definitively identify the Self-Select PIN and the Practitioner PIN as

the means of signing an electronic return, they provide no explicit indication that the IP PIN is part of the signature. See 2013 Form 1040 Instructions, at 73; see also IRS Publication 4164, Modernized e-File (MeF) Guide for Software Developers and Transmitters: Processing Year 2014 (Rev. 12-2013), at 16-17, 177-187 (hereinafter Pub. 4164) (addressing signature method and IP PIN in different sections and giving no indication that IP PIN is part of signature requirement); IRS Publication 17, Your Federal Income Tax for Individuals (Nov. 26, 2013), at 8-9 (same). The IP PIN appears within the "Sign Here" section of the 2013 Form 1040 itself, but so do other elements of the return that are not fundamental to a Beard signature. See, e.g., Hulett v. Commissioner, 150 T.C. at 68 (finding a return validly executed even though it omits taxpayers' daytime phone number, which is requested in the "Sign Here" section); Estate of Temple v. Commissioner, 67 T.C. 143, 164 (1976) (finding the absence of one spouse's signature on 1966 Form 1040 does not itself prevent return from being joint return, even though the 1966 Form 1040, like the 2013 Form 1040, provides in the "Sign Here" section that both spouses must sign a joint return). The upshot of the form and its instructions is that a taxpayer signs an efiled return by providing a Self-Select PIN or a Practitioner PIN. Petitioner justifiably relied on these documents, and respondent cannot now disavow them.

Respondent does not refer us to any form, regulation, or other taxpayer-directed guidance that defines an IP PIN as part of the signature. Instead, respondent cites the Internal Revenue Manual (IRM), an explanation of IRS administrative practices, which provides that if an electronic return is filed with a missing or incorrect IP PIN, "the e-filed return will reject." IRM pt. 10.5.3.2.15(3) (Jan. 16, 2014). An IP PIN does not become part of the signature requirement simply because respondent's software will reject an efiled return without it. Furthermore, the Modernized e-File (MeF) system, which the IRS uses to process efiled returns, see infra Part II.B, rejects returns for numerous errors that may not cause a return to fail the Beard test.[9] None of the authorities respondent cites makes the IP PIN part of the prescribed signature method.[10] We therefore hold that an IP PIN is not required to start the limitations period under section 6501(a).

---

[9]See generally IRS 1040 Business Rules for Tax Year 2014, Version 2014v4.0 (noting that the MeF system will reject a submission, e.g., if it lists an incorrect ZIP Code or Social Security number). Note also that the IRM says an IP PIN is a required input for both paper and efiled returns, but does not direct IRS employees to reject paper returns with a missing IP PIN. See IRM pt. 10.5.3.2.15(4) (Jan. 16, 2014).

[10]We do not decide here whether respondent may make the IP PIN part of the efiling signature requirement; we conclude only that the IP PIN was not part of the efiling signature requirement for the year at issue.

Respondent urges that he needs an IP PIN from a taxpayer like petitioner to authenticate the person who provides the return as the taxpayer he purports to be. Respondent's reasoning seems to be that because a function of a signature is to authenticate a return, and because the IRS cannot authenticate a return in a case like this without an IP PIN, the IP PIN must be part of the signature requirement even if IRS guidance does not explicitly define the IP PIN as a component of the e-signature.

We disagree for three reasons. First, it is true that a signature may serve an authentication function. See Hulett v. Commissioner, 150 T.C. at 93. But internal IRS guidance has acknowledged that an element other than an e-signature may be needed to authenticate an electronic return. See Chief Counsel Advisory 201650019 (Dec. 9, 2016) (distinguishing between an e-signature and a "security procedure", which verifies that the e-signature belongs to a specific person).

Second, where an ERO such as Bennett Thrasher prepares a return, the ERO is instructed to verify the taxpayer's identity. See Pub. 1345, at 23-24; 2013 Form 8879, at 2. It is not obvious to us why this requirement does not make the IP PIN superfluous in petitioner's case.

Third, and most fundamentally, section 6061 places the onus on the Government to prescribe the signature method. The Code does not require a

taxpayer to deduce what constitutes a signature from the function of signatures in the legal world or the IRS' inherently esoteric authentication needs. Because the October 15 submission included a Practitioner PIN, which the 2013 Form 1040 Instructions identify as an e-signature, we hold that this submission satisfies the Beard test and, accordingly, constitutes a "return" for statute of limitations purposes.

B. Properly Filed

A "return" by itself does not trigger the statute of limitations; the return must be "properly filed". Appleton v. Commissioner, 140 T.C. at 284. The filing requirement is not premised on whether the IRS is informed; i.e., it is not a question of what the IRS received and understood. Vento v. Commissioner, 152 T.C. at 15-16 (Thornton, J., concurring). Instead, a filing issue is generally a question of whether the taxpayer's mode of filing complied with the prescribed filing requirements. Id. We analyze the filing prong of Appleton in this Part II.B even though respondent does not challenge the premise that petitioner filed his 2013 Form 1040 as prescribed, or that respondent's software received and reviewed the document. See Hulett v. Commissioner, 150 T.C. at 80 (analyzing whether and when taxpayers filed purported returns, even though IRS focused "entirely on the 'return' argument and not on the 'filed' issue").

In general, a return is "filed" when it has been physically delivered to the correct IRS office. See sec. 7502 (implicitly equating filing with delivery); Allnutt v. Commissioner, 523 F.3d 406, 412-413 (4th Cir. 2008), aff'g T.C. Memo. 2002-311; Miller v. United States, 784 F.2d 728, 730 (6th Cir. 1986); Hotel Equities Corp. v. Commissioner, 546 F.2d 725, 727 (7th Cir. 1976), aff'g 65 T.C. 528 (1975). This follows from the requirement in section 6501(a) that the return "be filed by the taxpayer". (Emphasis added.) A taxpayer can deliver a return, e.g., through the USPS or electronically, but a taxpayer cannot accept a return or process a return. We held in Blount v. Commissioner, 86 T.C. 383, 387-388 (1986), that a document that qualifies as a return under the Beard test is filed upon delivery, even if the IRS does not accept or process the document.

We find there is no genuine dispute that petitioner delivered the October 15 submission to respondent. Petitioner submitted with his motion an affidavit signed by Jeffrey Call, who stated that he submitted a 2013 Form 1040 to respondent on behalf of petitioner. See Caulkins v. Commissioner, T.C. Memo. 1984-504, 48 T.C.M. (CCH) 1182, 1186 (1984) ("[F]undamental agency law provides that the actions of the tax preparer (agent) are imputed to the taxpayer (principal)."). Petitioner also provided Bennett Thrasher's transmission log, which included the 20-digit Submission ID given to an efiler after submitting a

return. Most significantly, respondent acknowledges that petitioner submitted a return on October 15, 2014, when he states in his response to petitioner's cross-motion for summary judgment that petitioner "first attempted to e-file his 2013 income tax return on October 15, 2014, but his e-filing attempt was unsuccessful because he failed to include his IP PIN on the return."

A brief review of how the IRS receives and processes efiled returns puts this case in context. Efilers transmit data through the internet to the IRS MeF system, a computer system that converts the electronic data to a tax return. IRM pt. 3.42.5.23.1 (Oct. 1, 2011), 3.42.5.24.4(1) (Oct. 1, 2010).[11] MeF checks for errors by comparing the transmitted data to Extensible Markup Language (XML) schema and applying a series of "Business Rules." Pub. 4164, at 135; IRM pt. 3.42.5.24.4(1). Returns that successfully pass this validation process are "Accepted", and are forwarded for additional processing to the IRS systems used to process paper returns. IRM pt. 3.42.5.24.4(1)(j). All electronic return data is stored in an official IRS repository and may be viewed by authorized IRS employees using XML stylesheets. Id. pt. 3.42.5.24.4(1)(k). Within 24 hours of receiving an efiled return, MeF responds with an acknowledgment that includes a

---

[11]Respondent began using MeF for Forms 1040 in February 2010. IRM pt. 3.42.5.23.2(1) (Sept. 6, 2012).

Submission ID, accepted or rejected status, and, if rejected, an error message and a rule number that uniquely identifies the relevant Business Rule. Pub. 4164, at 131-132, 141-142; IRM pt. 3.42.5.25(3).

In this case, the return efile data was not only delivered to respondent's MeF system, but the MeF system reviewed the data and determined that the return failed MeF validation. The MeF system then sent Mr. Call a rejection acknowledgment bearing rule number "IND-181". Respondent does not raise any issues with how petitioner delivered the October 15 submission to the MeF system; rather, the only issue respondent raises is with respect to the content of the return. Given that the filing inquiry concerns not "what the IRS received and understood" but only the "mode of filing", see Vento v. Commissioner, 152 T.C. at 15-16 (Thornton, J., concurring), we find that the return was delivered to respondent, and that petitioner "properly filed" a return.

Where a taxpayer properly files a required return, the taxpayer has satisfied all his duties to trigger the statute of limitations. Respondent has many tools to determine the appropriate liability, but he must use these tools within the prescribed limitations period. We simply see no reason to allow respondent to toll the statute of limitations where petitioner properly filed a return. Because we find

that the October 15 submission was a "required return" and "properly filed," we forgo consideration of the October 28 submission.

## Conclusion

We conclude that the limitations period expired before respondent issued the notice of deficiency. Accordingly, we will grant petitioner's motion for summary judgment, and we will deny respondent's motion for partial summary judgment.

To reflect the foregoing,

An appropriate order and decision

will be entered.

Reviewed by the Court.

FOLEY, GALE, THORNTON, GUSTAFSON, PARIS, MORRISON, KERRIGAN, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, and TORO, JJ., agree with this opinion of the Court.