**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SEAVIEW TRADING, LLC, AGK INVESTMENTS, LLC, TAX MATTERS PARTNER,<br>*Petitioner-Appellant,*<br><br>v.<br><br>COMMISSIONER OF INTERNAL REVENUE,<br>*Respondent-Appellee.* | No. 20-72416<br><br>Tax Ct. No. 1837-11<br><br><br>OPINION |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted En Banc December 13, 2022
Pasadena, California

Filed March 10, 2023

Before:  Mary H. Murguia, Chief Judge, and Ronald M. Gould, Morgan Christen, Paul J. Watford, Mark J. Bennett, Danielle J. Forrest, Patrick J. Bumatay, Jennifer Sung, Holly A. Thomas, Salvador Mendoza, Jr., and Roopali H. Desai, Circuit Judges.

Opinion by Judge Watford;
Dissent by Judge Bumatay

**SUMMARY**[*]

**Tax**

Affirming the Tax Court's decision concluding that the Internal Revenue Service's notice of final partnership administrative adjustment was timely, the en banc court held that neither Seaview Trading LLC's faxing a copy of their delinquent 2001 tax return to an IRS revenue agent in 2005, nor mailing a copy to an IRS attorney in 2007, qualified as a "filing" of the partnership's return, and therefore the statute of limitations did not bar the IRS's readjustment of the partnership's tax liability.

In July 2005, an IRS revenue agent informed Seaview that the agency had no record of receiving the partnership's return for the 2001 tax year. The revenue agent asked Seaview to send him retained copies of any 2001 return that Seaview claimed to have filed as well as proof of mailing. Seaview's accountant complied with this request in September 2005 by faxing a copy of its 2001 Form 1065 to the revenue agent's office in South Dakota, along with a certified mail receipt for an envelope that had been mailed to the Ogden Service Center in July 2002. Seaview initially claimed that it included its 2001 partnership return in that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

envelope, which contained the tax return of another related entity, but Seaview conceded on appeal that it could not prove that the IRS received its 2001 return as part of that mailing. In July 2007, after the IRS commenced an audit of Seaview, Seaview's counsel mailed the same copy of its 2001 return to the office of an IRS attorney in Minnesota.  Neither the IRS revenue agent in South Dakota nor the IRS attorney in Minnesota forwarded the copies of Seaview's 2001 partnership return to the relevant Service Center in Ogden, Utah, for processing.  Nor did Seaview itself forward copies of its return to the Ogden Service Center at that time.

In October 2010, the IRS issued a notice of final partnership administrative adjustment concerning Seaview's 2001 return, in which it disallowed the $35.5 million loss Seaview had claimed.  Through its tax matters partner, Seaview filed a petition in the United States Tax Court challenging the agency's adjustment.  Seaview conceded that it was not entitled to claim the $35.5 million loss, but it argued that the IRS's disallowance of the loss was untimely.

26 U.S.C. § 6230(i) (2000), which was applicable during the period in question, provided that a partnership's return "shall be filed . . . at such time, in such manner, and at such place as may be prescribed in regulations."  The implementing regulations, 26 C.F.R. § 1.6031(a)-1(e)(2001), in turn, provided that "[t]he return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form" and that "[t]he return of a partnership must be filed on or before the fifteenth day of the fourth month following the close of the taxable year of the partnership."  The Tax Court held that Seaview never "filed" its 2001 return because it failed to send the return to

the designated place for filing under Treasury Regulation § 1.6031(a)-1(e)(1) )—namely, the IRS's Ogden Service Center. The en banc court agreed.

The en banc court explained that Seaview did not meticulously comply with the regulation's place-for-filing requirement because neither the IRS revenue agent nor the IRS attorney to whom Seaview sent copies of its 2001 return qualified as a designated place for filing. And at no point was Seaview's return ever forwarded to the designated place for filing at the Ogden Service Center. The en banc court concluded that because Seaview did not meticulously comply with the regulation's place-for-filing requirement, it was not entitled to claim the benefit of the three-year limitations period. Rather, having never properly filed its return, Seaview was instead subject to 26 U.S.C. § 6229(c)(3) (2000), which allows taxes attributable to partnership items to be assessed "at any time."

The en banc court wrote that its conclusion was consistent with cases from other circuits and a long line of Tax Court decisions. The en banc court also rejected Seaview's argument that the regulation's place-for-filing requirement applies only to returns that are timely filed—not to those that are filed late. The en banc court additionally rejected Seaview's contention that its position was supported by the IRS's historical interpretation and practice, as evidenced by agency documents.

Dissenting, Judge Bumatay wrote that because the IRS's current position was inconsistent with the Tax Code, its regulations, and its own guidances, he would have reversed the Tax Court's decision. Judge Bumatay explained that for over 20 years, the IRS has told taxpayers that they can file late or untimely tax returns with requesting IRS officials, and

has assured taxpayers it will accept all delinquent returns submitted by a taxpayer at the request of a Service representative. The IRS has also encouraged taxpayers to file their delinquent returns directly with the revenue officer instead of mailing them to the appropriate IRS Service Center.

Judge Bumatay observed that the IRS had now backtracked on its public statements, and as a result, any taxpayers who filed their delinquent tax returns by sending them directly to requesting IRS officials may find that their returns were never deemed filed and, even worse, they may be liable to the IRS forever. In Judge Bumatay's view, the IRS's public guidances about filing delinquent tax returns with requesting officials adhered to the Tax Code and IRS regulations. Under the plain meaning of the Tax Code, Judge Bumatay would hold that a late partnership tax return is "filed" for statute-of-limitations purposes when (1) an IRS representative authorized to obtain and receive delinquent returns informs a partnership that a tax return is missing and requests that tax return, (2) the partnership responds by giving the IRS representative the tax return in the manner requested, and (3) the IRS representative receives the tax return.

## COUNSEL

Lisa S. Blatt (argued), Sarah M. Harris, J. Matthew Rice, Kimberly Broecker, and Harrison L. Marino, Williams & Connolly LLP, Washington, D.C.; David W. Foster and Armando Gomez, Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; for Petitioner-Appellant.

Francesca Ugolini (argued), Arthur T. Catterall, and Anthony T. Sheehan, Attorneys, Tax Division; David A. Hubbert, Acting Assistant Attorney General; United States Department of Justice; Washington, D.C.; William J. Wilkins, Chief Counsel; Internal Revenue Service; Washington, D.C.; for Respondent-Appellee.

Professor T. Keith Fogg and Janice Rovner Feldman, Tax Clinic at the Legal Services Center of Harvard Law School, Jamaica Plain, Massachusetts, for Amici Curiae the Center for Taxpayer Rights and the Federal Tax Clinic at the Legal Services Center of Harvard Law School.

**OPINION**

WATFORD, Circuit Judge:

The Internal Revenue Service (IRS) generally has three years from the date a taxpayer files a tax return to assess any taxes that are owed for that year. In this case, we must decide whether a partnership "filed" its 2001 tax return by faxing a copy of that return to an IRS revenue agent in 2005 or by mailing a copy to an IRS attorney in 2007. If either of those actions qualified as a "filing" of the partnership's return, the statute of limitations would bar the IRS's decision, more than three years later, to disallow a large loss the partnership had claimed. We conclude that neither action constituted a filing of the return and that the IRS's disallowance of the loss was therefore timely.

I

During the relevant period, Seaview Trading, LLC, was a company classified as a partnership for federal income tax purposes with its principal place of business in California. *Seaview Trading, LLC v. Commissioner*, 858 F.3d 1281, 1283 (9th Cir. 2017). Seaview claimed a $35.5 million loss arising from a tax-shelter transaction on its 2001 partnership return, called a Form 1065.

A provision of the Internal Revenue Code (applicable at the time but since repealed) stated that a partnership's return "shall be filed . . . at such time, in such manner, and at such place as may be prescribed in regulations." 26 U.S.C.

§ 6230(i) (2000).[1]  The Treasury Department implemented this provision by issuing regulations which, as relevant here, provided clear instructions specifying the time and place for filing partnership returns:

> (e) *Procedural requirements*—(1) *Place for filing*.  The return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form (see § 601.601(d)(2)).
>
> (2) *Time for filing*.  The return of a partnership must be filed on or before the fifteenth day of the fourth month following the close of the taxable year of the partnership.

26 C.F.R. § 1.6031(a)-1(e) (2001).  The 2001 Form 1065 instructions stated that a partnership with its principal place of business in California had to file its return with the Service Center in Ogden, Utah.  *See* IRS, Instructions for Form 1065 at 4 (2001).  Thus, to file its 2001 return on time, Seaview was required to send its return to the Ogden Service Center by April 15, 2002.

In July 2005, an IRS revenue agent informed Seaview that the agency had no record of receiving the partnership's return for the 2001 tax year.  The revenue agent asked Seaview to send him retained copies of any 2001 return that Seaview claimed to have filed as well as proof of mailing.

---

[1] The statutory provisions applicable here were repealed by the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101(a), 129 Stat. 584, 625.

Seaview's accountant complied with this request in September 2005 by faxing a copy of its 2001 Form 1065 to the revenue agent's office in South Dakota, along with a certified mail receipt for an envelope that had been mailed to the Ogden Service Center in July 2002. Seaview initially claimed that it included its 2001 partnership return in that envelope, which contained the tax return of another related entity, but Seaview concedes on appeal that it cannot prove the IRS received its 2001 return as part of that mailing.

In July 2007, after the IRS commenced an audit of Seaview, Seaview's counsel mailed the same copy of its 2001 return to the office of an IRS attorney in Minnesota. Seaview's counsel wrote: "Pursuant to our prior conversation, enclosed is a copy of the Seaview Trading, LLC's retained copy of its 2001 Form 1065."

Neither the IRS revenue agent in South Dakota nor the IRS attorney in Minnesota forwarded the copies of Seaview's 2001 partnership return to the Ogden Service Center for processing. Nor did Seaview itself forward copies of its return to the Ogden Service Center at that time.

In October 2010, the IRS issued a notice of final partnership administrative adjustment concerning Seaview's 2001 return, in which it disallowed the $35.5 million loss Seaview had claimed. Through its tax matters partner, Seaview filed a petition in the United States Tax Court challenging the agency's adjustment. Seaview conceded that it was not entitled to claim the $35.5 million loss, but it argued that the IRS's disallowance of the loss was untimely. The applicable statute of limitations set the deadline for assessing taxes owed as "3 years after . . . the date on which the partnership return for such taxable year *was filed*." 26 U.S.C. § 6229(a)(1) (2000) (emphasis added). As the statute

makes clear, the limitations period begins to run only when a return has been "filed," regardless of when that filing occurs. But if a partnership never files a return for a taxable year, "any tax attributable to a partnership item (or affected item) arising in such year may be assessed at any time." § 6229(c)(3).

Before the Tax Court, Seaview did not argue that it had filed its 2001 return on time by sending it to the IRS's Ogden Service Center in 2002. Instead, Seaview claimed it had filed a delinquent return either in September 2005, when it faxed a retained copy of the return to the IRS revenue agent, or in July 2007, when it mailed the same copy to the IRS attorney. If either of those actions constituted a "filing," the statute of limitations would have expired at the latest by July 2010, rendering the IRS's October 2010 administrative adjustment untimely.

The Tax Court rejected Seaview's argument. It held that Seaview never "filed" its 2001 return because it failed to send the return to the designated place for filing under Treasury Regulation § 1.6031(a)-1(e)(1)—namely, the IRS's Ogden Service Center. Citing *Winnett v. Commissioner*, 96 T.C. 802 (1991), the court noted that "if a taxpayer submits a return to the wrong place but the return is later forwarded to [the] designated place for filing, the limitations period commences when the return is received at the designated place for filing." Seaview could not avail itself of that rule, however, because "[n]either of the purported returns was forwarded to the Ogden service center." The court further held that, even if Seaview had sent its returns to the designated place for filing, the copies of the Form 1065 it submitted did not qualify as "returns."

Over the dissent of Judge Bade, a three-judge panel of our court reversed the decision of the Tax Court and held that the IRS's administrative adjustment was barred by the statute of limitations. *Seaview Trading, LLC v. Commissioner*, 34 F.4th 666 (9th Cir. 2022). A majority of the non-recused active judges subsequently voted to rehear the case en banc. 54 F.4th 608 (9th Cir. 2022).

## II

The Supreme Court has held that "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government." *Badaracco v. Commissioner*, 464 U.S. 386, 392 (1984) (quoting *Lucia v. United States*, 474 F.2d 565, 570 (5th Cir. 1973) (en banc)). That means there must be "meticulous compliance by the taxpayer with all named conditions in order to secure the benefit of the limitation." *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930).

Here, one of the "named conditions" with which Seaview had to comply to secure the benefit of the limitations period was the requirement that a partnership file its return "at such place as may be prescribed in regulations." 26 U.S.C. § 6230(i) (2000). The governing regulations provided that "[t]he return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form," which in Seaview's case was the Service Center in Ogden, Utah. 26 C.F.R. § 1.6031(a)-1(e)(1) (2001); *see also* IRS, Instructions for Form 1065 at 4 (2001). Seaview did not meticulously comply with the regulation's place-for-filing requirement because neither the IRS revenue agent nor the IRS attorney to whom Seaview sent copies of its 2001 return qualified as a designated place for filing. And at no point

was Seaview's return ever forwarded to the designated place for filing.[2]

Because Seaview did not meticulously comply with the regulation's place-for-filing requirement, it is not entitled to claim the benefit of the three-year limitations period. Having never properly filed its return, Seaview is instead subject to the provision allowing taxes attributable to partnership items to be assessed "at any time."  26 U.S.C. § 6229(c)(3) (2000).

The conclusion we reach here is consistent with cases from other circuits and a long line of Tax Court decisions. Among the circuit court decisions, *Allnutt v. Commissioner*, 523 F.3d 406 (4th Cir. 2008), is perhaps most on point. There, the court held that a taxpayer did not "file" delinquent returns when he hand delivered them to the designated place for filing but gave the returns to a person at that location who was not authorized to accept hand-carried returns.  *Id.* at 407, 413.  The returns eventually made their way from that person to a person authorized to accept hand-carried returns, and at

---

[2] The IRS informs us that under a different regulation, which as relevant here has remained unchanged since 2005, Seaview also had the option of filing by hand carrying its return to "any person assigned the responsibility to receive hand-carried returns in the local Internal Revenue Service office as provided in paragraph (a) of this section."  26 C.F.R. § 1.6091-2(d)(1).  Paragraph (a) refers to "the local Internal Revenue Service office that serves the legal residence or principal place of business of the person required to make the return."  § 1.6091-2(a)(1). We need not decide whether the IRS revenue agent or the IRS attorney to whom Seaview sent its return was "assigned the responsibility to receive hand-carried returns," or whether faxing or mailing a return qualifies as "hand carrying" (*see* § 301.6091-1(c)), because neither the agent nor the attorney worked in Seaview's local IRS office in California.

that point the returns were deemed filed. *Id.* at 414. Measured from that later date, however, the IRS's assessment notice was timely. *Id.*; *see also Coffey v. Commissioner*, 987 F.3d 808, 812–15 (8th Cir. 2021); *O'Bryan Bros., Inc. v. Commissioner*, 127 F.2d 645, 647 (6th Cir. 1942); *W.H. Hill Co. v. Commissioner*, 64 F.2d 506, 507–08 (6th Cir. 1933).

The Tax Court has also repeatedly held that a return is not properly "filed" unless it is submitted to, or eventually received by, the person or office specified in the applicable regulations as the designated place for filing.[3] Although Tax Court decisions do not bind us, we have consistently recognized that court's unique expertise in tax matters, *see, e.g.*, *Gragg v. United States*, 831 F.3d 1189, 1192 (9th Cir. 2016), and here we find its decisions persuasive.

In short, Seaview did not deliver its 2001 partnership return to the designated place for filing, and the return was never forwarded to that location. As a result, the return was never properly filed, and the three-year statute of limitations never began to run.[4]

---

[3] *See, e.g.*, *Smyth v. Commissioner*, 113 T.C.M. (CCH) 1132, 2017 WL 504711, at *3 (2017); *Friedmann v. Commissioner*, 82 T.C.M. (CCH) 381, 2001 WL 883222, at *2–3, 6–7 (2001), *aff'd*, 80 F. App'x 285 (3d Cir. 2003); *Turco v. Commissioner*, 74 T.C.M. (CCH) 1437, 1997 WL 786967, at *1–2 (1997); *Green v. Commissioner*, 65 T.C.M. (CCH) 2347, 1993 WL 101371, at *2, 7 (1993), *aff'd*, 33 F.3d 1378 (5th Cir. 1994) (per curiam) (unpublished); *Metals Refining Ltd. v. Commissioner*, 65 T.C.M. (CCH) 2171, 1993 WL 89189, at *1–3, 6–7 (1993); *Winnett*, 96 T.C. at 807–09.

[4] Because Seaview's failure to file its 2001 return is dispositive of this appeal, we need not decide whether the Form 1065 copies that Seaview sent in 2005 and 2007 qualify as "returns."

## III

Seaview argues that it was not required to meticulously comply with Treasury Regulation § 1.6031(a)-1(e)'s place-for-filing requirement because that requirement does not apply here at all.  According to Seaview, the regulation's place-for-filing requirement applies only to returns that are *timely* filed—not to those that are filed late.  Thus, under Seaview's reading of the regulation, if Seaview had attempted to file its 2001 return on time, it would have been required to send its return to the Ogden Service Center, as § 1.6031(a)-1(e)(1) dictates.  Seaview nevertheless asserts that, because its 2005 fax and 2007 mailing of the return occurred after the filing deadline, it was excused from complying with the place-for-filing requirement.

We do not think § 1.6031(a)-1(e) can be read in the manner Seaview urges.  The regulation makes no distinction between returns that are filed on time and those that are filed late, and its place-for-filing requirement contains no carve-out for delinquent returns.  Although it is true, as Seaview notes, that the regulation prescribes both place-for-filing and time-for-filing requirements, those requirements appear in separate provisions.  As Judge Bade observed in her dissent from the three-judge panel decision, nothing in the text of the regulation indicates that compliance with the place-for-filing requirement is conditioned upon compliance with the time-for-filing requirement, such that filing at the designated place somehow becomes optional whenever a taxpayer files its return late. *Seaview Trading*, 34 F.4th at 682–83 (Bade, J., dissenting).

Seaview also contends that its position is supported by the IRS's historical interpretation and practice, as evidenced by three agency documents.  According to Seaview, these

documents support the conclusion that the 2005 fax and the 2007 mailing qualify as "filings" of its return. We disagree.

The first document, a 1999 advice memorandum from an Acting Assistant Chief Counsel, analyzed the regulation mentioned earlier, 26 C.F.R. § 1.6091-2, which at the time provided that taxpayers could file a return either "by mailing it to the appropriate Service Center or by hand carrying the return to the District Director of the internal revenue district in which they live." IRS, Chief Counsel Advice No. 199933039 at 3 (Aug. 20, 1999), https://www.irs.gov/pub/irs-sca/9933039.pdf. Now defunct, the District Director's office was responsible for the administration of IRS operations within a given tax district. The memorandum addressed whether revenue officers could accept hand-carried returns for filing as delegees of the District Director. The memorandum concluded that they could and that permitting them to do so was "consistent with the regulations as the revenue officers are acting on behalf of, and under the authority of, the District Director." *Id.* That conclusion provides no support for Seaview's contention that an IRS revenue agent and IRS attorney located outside its local service office could accept its 2001 return for filing. *See* n.2, *supra*.

Seaview makes much of the advice memorandum's observation that "[t]he Code, regulations, and instructions of the Form 1040 do not make any reference to delinquent returns." Chief Counsel Advice No. 199933039 at 3 n.1. In context, however, that statement does not support Seaview's argument that the regulations are "silent" as to the designated place for filing delinquent returns. The memorandum was discussing whether revenue officers could *require* taxpayers to file delinquent returns by hand delivering them to a revenue officer in their local District

Director's office, rather than by mailing them to the appropriate Service Center. The memorandum concluded that "[s]ince the Code and regulations do not differentiate between timely filed and delinquent returns, taxpayers may file their delinquent returns either with the applicable Service Center or with a revenue officer." *Id.* at 4 n.2. We agree that the Tax Code and regulations do not differentiate between timely and delinquent returns—both must be filed in accordance with the prescribed place-for-filing requirements. Here, Seaview failed to file in accordance with those requirements for the reasons discussed above.

The second document, the 2005 Internal Revenue Manual, states that examiners should advise taxpayers to deliver delinquent returns "promptly to the examiner," Internal Revenue Manual § 4.12.1.4.2 (2005), and then instructs IRS personnel to process the delinquent returns by sending them "to the appropriate campus," *id.* § 4.4.9.7.3. That guidance is consistent with the Tax Code and regulations, which require returns to be filed at the appropriate Service Center. But even assuming the revenue agent in Seaview's case was required to follow this guidance and failed to do so, that fact would not alter our analysis because the "Internal Revenue Manual does not have the force of law and does not confer rights on taxpayers." *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006).

The last document, a 2006 policy statement, provides that absent an indication of fraud, "[a]ll delinquent returns submitted by a taxpayer, whether upon his/her own initiative or at the request of a Service representative, will be accepted." IRS Policy Statement 5-133, *Delinquent Returns—Enforcement of Filing Requirements* (Aug. 4, 2006), https://www.irs.gov/irm/part1/irm_01-002-001#idm 140099600018288. That statement does nothing more than

confirm that delinquent returns submitted by taxpayers will be "accepted" rather than rejected on the ground they are late. It does not purport to override the regulatory requirements that otherwise govern the manner in which, and the place at which, returns must be filed.

Seaview's reliance on *Dingman v. Commissioner*, 101 T.C.M. (CCH) 1562, 2011 WL 2150027 (2011), is misplaced. There, Dingman had failed to file his income tax returns for several tax years. *Id.* at \*1. During an IRS criminal investigation against him, he delivered to IRS investigators original returns for the missing years, along with checks to pay the corresponding tax liabilities. *Id.* The IRS posted those payments to Dingman's tax accounts. *Id.* More than three years later, the IRS attempted to assess additional taxes against Dingman for fraudulent failure to file returns, and Dingman challenged the agency's assessment as time barred. *Id.* at \*1–2.

The Tax Court held that the IRS's assessment was untimely because Dingman had "filed" his returns—and the statute of limitations had therefore started to run—on the date the checks were credited to Dingman's accounts. The crediting of those payments, the court concluded, was evidence that his returns had ultimately reached "an IRS office that had the authority to process" them. *Id.* at \*9; *see also id.* at \*12–13.

The court did not, however, hold that Dingman's returns were "filed" when Dingman delivered them to the IRS investigators. *Id.* at \*1, 13. Instead, consistent with Tax Court precedent, the court reasoned that when a taxpayer submits a return to someone who is not authorized to accept it for filing, and the return is subsequently forwarded to the correct IRS office, the limitations period commences on that

later date. *Id.* at *12 (citing *Winnett*, 96 T.C. at 808). The Tax Court rejected the IRS's argument that Dingman had failed to "meticulously comply" with all named conditions because, in the wake of an agency-wide reorganization, the regulations in question directed taxpayers to file their returns in outdated places with non-existent recipients. *Id.* at *8–9, 10–11.

Here, by contrast, the regulations in place in 2005 and 2007 offered effective guidance regarding the place for filing returns—Seaview simply failed to comply with the regulation's requirements. And, unlike in *Dingman*, Seaview's returns were never received at the correct location and processed there.

*          *          *

Seaview did not "file" its 2001 partnership return, either when it faxed a copy of the return to the IRS revenue agent or when it mailed a copy to the IRS attorney. We affirm the Tax Court's decision holding that the IRS's notice of final partnership administrative adjustment was timely.

**AFFIRMED.**

BUMATAY, Circuit Judge, dissenting:

Today, our court throws our tax system into disarray. Now taxpayers can no longer trust what the IRS has told them about how to file delinquent tax returns. For over 20 years, the IRS has told taxpayers they can file late or untimely tax returns with requesting IRS officials. The IRS has assured taxpayers it will "accept[]" "[a]ll delinquent returns submitted by a taxpayer . . . at the request of a Service representative." IRS Manual § 1.2.1.6.18(1) (2006). And the IRS has encouraged taxpayers "to file [their] delinquent return[s] directly with the revenue officer instead of mailing [them] to the appropriate [IRS] Service Center." IRS Office of Chief Counsel, Chief Counsel Advice No. 199933039, *Filing Delinquent Returns Directly With Revenue Officers* (Aug. 20, 1999), at 4. But the IRS now backtracks on its public statements. The IRS urges our court to hold that a delinquent return is only "filed" under the Tax Code if it is mailed to an IRS Service Center. And unfortunately, our court acquiesces. As a result, any taxpayers who filed their delinquent tax returns by sending them directly to requesting IRS officials may find that their returns were *never* deemed filed and, even worse, they may be liable to the IRS *forever*.

What makes our court's decision most perplexing is that the IRS's public guidances about filing delinquent tax returns with requesting officials adheres to the Tax Code and IRS regulations. The Tax Code only requires filing a return as the IRS "*may* prescribe in regulations." 26 U.S.C. § 6230(i) (repealed 2015) (emphasis added). But here, the IRS has promulgated no regulation on how partnerships must file "delinquent" returns. In such cases, we follow the plain meaning of "filing." And, as the IRS has previously

concluded, sending a delinquent return to a requesting IRS official fits with the plain meaning of the term. So the IRS's public statements about filing delinquent returns with an IRS representative follows the law, and we should have held the IRS to its promises.

Instead, our court lets the IRS "speak[] out of both sides of its mouth." *Bittner v. United States*, No. 21-1195, slip op. at 10 n.5 (U.S. Feb. 28, 2023). While publicly encouraging filing with individual IRS representatives, our court says that those same representatives can arbitrarily withhold acceptance of a delinquent return by not forwarding it to an IRS Service Center. All this after the IRS representative directly requested the return from the taxpayer and the taxpayer complied with the request. We thus grant a disturbing unilateral power to individual government employees to determine whether a return is "filed." Nothing in the law supports this conclusion.

Here, an IRS revenue agent contacted Seaview Trading, LLC, a California-based partnership, in 2005 about a delinquent return and asked if it had filed a tax return for the 2001 tax year. The IRS agent also requested that the return be sent directly to him. Seaview thought it had sent its 2001 tax return on time. But it complied with the request, mailing the tax return directly to the agent. Years went by. Then, in 2010, the IRS used the 2001 tax return sent to the agent to audit Seaview and recalculate the partnership's tax liability. The IRS now says that, after all that time, Seaview still owes it money. But according to Seaview, it's too late—the three-year statute of limitations has long since run from when the partnership sent the IRS agent its return in 2005.

Our court sides with the IRS because the IRS agent didn't forward Seaview's return to the IRS Service Center in

Ogden, Utah. Instead, we conclude that Seaview should have also mailed the delinquent return to Ogden. Because it didn't, Seaview's fate was sealed by one IRS official's unilateral decision to keep the return to himself.

But we are nation of laws, not bureaucrats. It's the plain meaning of the Tax Code that governs this case—not the whims of some IRS agent. While the majority may feel that tax liabilities may be easily afforded—or even deserved—by a multi-million-dollar partnership like Seaview, the consequences of our court's decision will fall on countless taxpayers without the legal resources or means to defend themselves against the arbitrary power of individual IRS officials.

Because our conclusion defies the Tax Code and common sense, I respectfully dissent.

## I.

When is a delinquent tax return "filed" to trigger the statute of limitations? The IRS offers two conflicting answers to this question—a public position and a litigation position. In its public statements and internal guidances, the IRS says that taxpayers can file a late return by following the directions of IRS officials who request it. But in briefs and oral argument, the IRS contends that a taxpayer may file an untimely return only by mailing it to the agency's Service Center. Under the IRS's litigation position, a tax return is filed only if sent to a requesting IRS official *and* the IRS official takes the purely discretionary step to forward it to the Service Center. Because no regulation compels the IRS's litigation position, I would follow the IRS's common sense, public position.

Based on the plain meaning of the Tax Code, I would hold that a late partnership tax return is "filed" for statute-of-limitations purposes when (1) an IRS representative authorized to obtain and receive delinquent returns informs a partnership that a tax return is missing and requests that tax return, (2) the partnership responds by giving the IRS representative the tax return in the manner requested, and (3) the IRS representative receives the tax return.

## A.

The IRS generally has three years after "the date on which the partnership return for [a] taxable year was filed" to determine a partnership's tax liability.  *See* 26 U.S.C. § 6229(a) (repealed 2015).  But if the partnership files no return, the statute-of-limitations clock never starts.  Instead, "in the case of a failure by a partnership to file a return for any taxable year, any tax attributable to a partnership item . . . may be assessed at any time."  *Id.* § 6229(c)(3).  So whether the statute of limitations for tax liabilities is triggered depends on whether a partnership's tax return is "filed."

The Tax Code doesn't define when a tax return is "filed." *See Coffey v. Comm'r*, 987 F.3d 808, 812 (8th Cir. 2021) ("The Internal Revenue Code and the IRS regulations do not define the terms 'file' or 'filed.'").  Rather, the Tax Code states that partnership returns "shall be filed or made at such time, in such manner, and at such place as *may* be prescribed in regulations."  26 U.S.C. § 6230(i) (repealed 2015).  Thus, the Tax Code only mandates a certain method for filing returns when the IRS promulgates specific rules for filing. But since the IRS's authority to prescribe filing regulations is permissive, IRS regulations don't necessarily cover the field for filing returns.  In other words, because the Tax Code

specifies that the IRS *may* prescribe regulations, the IRS may also *not* prescribe any regulations. And when there's a regulatory gap, the plain meaning of "filing" must govern.

Here, we have a regulatory gap. No IRS regulation expressly provides for the filing of delinquent partnership returns. The IRS and the majority maintain that 26 C.F.R. § 1.6031(a)-1(e) governs the filing of all partnership returns—both timely and delinquent. But that's inconsistent with the text of the regulation. The regulation provides:

> (e) Procedural requirements—
>
>> (1) Place for filing. The return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form (see § 601.601(d)(2)).
>>
>> (2) Time for filing. The return of a partnership must be filed on or before the fifteenth day of the fourth month following the close of the taxable year of the partnership.

26 C.F.R. § 1.6031(a)-1(e). Tax forms show that the appropriate "service center" here is in Ogden, Utah. IRS, Instructions for Form 1065 at 4.

We know that § 1.6031(a)-1(e) doesn't dictate when partnerships are to file delinquent returns for at least four reasons. First, the regulation says nothing about delinquent returns. And second, it would be nonsensical to read the regulation to apply to both timely and delinquent returns. It's easy to show why. Let's pretend the majority is correct

and assume that the regulation applies to both "timely" and "delinquent" returns.  If that were true, then the regulation could be read as follows:

(1) Place for filing.  The **[timely or delinquent]** return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form (see § 601.601(d)(2)).

(2) Time for filing.  The **[timely or delinquent]** return of a partnership must be filed on or before the fifteenth day of the fourth month following the close of the taxable year of the partnership.

It's obvious where the majority's interpretation goes awry.  The regulation cannot apply to both timely and delinquent returns because it would render subsection (2) a logical impossibility.  Simply, a taxpayer can never file a delinquent or untimely return "on or before the fifteenth day of the fourth month following the close of the taxable year." *Id*.  Accepting the majority's interpretation creates a hypothetical reality in which it's possible to file an untimely return *on time*.  Thus, the majority treats a tax return like Schrödinger's Cat: it embraces the theoretical impossibility that a return could be simultaneously timely and untimely.  But a tax return is not Schrödinger's Cat.  And we have no business inserting paradoxes into an already complicated tax system.  Because a taxpayer—by definition—can never file an untimely return by the April 15 deadline, § 1.6031(a)-1(e) must only apply to timely returns.

Third, when the IRS wants a regulation to apply to "delinquent returns," it knows how to do so. *See* 26 C.F.R. § 601.104(c)(4) (imposing penalties for returns not filed "within the prescribed time" and setting a $10 penalty for each day "the return is delinquent"); 26 C.F.R. § 301.7502-1(f) (discussing claims for credit or refund relating to "late filed return[s]"); *see also* 26 U.S.C. § 6611(b)(3) (setting the rate of interest for "[l]ate returns").

Finally, as the IRS itself noted, § 1.6031(a)-1(e) doesn't set the exclusive method for filing partnership taxes. The Tax Code and IRS regulations permit partnerships to hand-carry returns to certain IRS offices. *See* 26 U.S.C. § 6091(b)(4) (allowing filing by hand-carrying to an appropriate internal revenue district); 26 C.F.R. § 1.6091-2(d)(1) (allowing filing by hand-carrying to "any person assigned the responsibility to receive hand-carried returns in the local Internal Revenue Service office"). So an IRS Service Center isn't the only place a partnership can file its returns—even when timely.

Even taking the IRS's position under its own terms, its view on filing procedures doesn't make sense. The IRS contends that § 1.6031(a)-1(e) is the only way to file partnership returns by mail and that taxpayers must meticulously comply with its requirements. But, in the next breath, the IRS says it will still accept returns sent to requesting IRS officials *if and only if* the IRS official also happens to forward it to the Service Center. Yet § 1.6031(a)-1(e) provides no such exception to its supposed mandatory requirement of mailing to a Service Center. If the IRS wants to make up steps for filing late returns, it should do so through regulation—not litigation. And our court should have refrained from endorsing this rulemaking by appellate argument.

And so nothing in the Tax Code or IRS regulations supports the majority's acquiescence to the IRS's view about the requirements for filing a delinquent return. While I agree with the majority that taxpayers must comply with "all named conditions" to benefit from the statute of limitations, *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930), that doesn't give us license to create "named conditions." Here, we should have said the obvious—that the IRS regulations are silent on how partnerships are to file late returns.

## B.

Because the Tax Code and the regulations don't define how a delinquent partnership return is "filed," we should have turned to the ordinary meaning of the term. *See Lang v. Comm'r,* 289 U.S. 109, 111 (1933) ("Giving the words of the [Tax Code] their natural and ordinary meaning . . . must be done[.]"); *see also Comm'r v. Brown*, 380 U.S. 563, 571 (1965) ("Generally speaking, the language in the Revenue Act, just as in any statute, is to be given its ordinary meaning[.]" (simplified)).

The Supreme Court confronted the ordinary meaning of "file" in another federal statute back in 1916:

> The word 'file' was not defined by Congress. No definition having been given, the etymology of the word must be considered and ordinary meaning applied. The word 'file' is derived from the Latin word '*filum*,' and relates to the ancient practice of placing papers on a thread or wire for safe-keeping and ready reference. Filing, it must be observed, is not complete until the document is delivered and received. . . . A paper is filed

> when it is delivered to the proper official and
> by him received and filed.

*United States v. Lombardo*, 241 U.S. 73, 76 (1916); *see Hotel Equities Corp. v. Comm'r*, 65 T.C. 528, 531 (1975) (applying *Lombardo*'s definition to the Tax Code). This definition tracks modern dictionary definitions. For example, to "file" means "[t]o deliver an instrument . . . to the proper officer . . . for the purpose of being kept on file by him as a matter of record and reference in the proper place," *Black's Law Dictionary* (5th ed. 1979), or "to place in a file" or "to place on record, *file an application*," *Oxford American Dictionary* (1980).

Our court has held that "a return is 'filed' at the time it is delivered to the IRS." *United States v. Hanson*, 2 F.3d 942, 946 (9th Cir. 1993). In that case, we considered the meaning of a "filing" for a fraudulent tax return charge under 26 U.S.C. § 7206. We concluded that a "filing" was accomplished when the taxpayer personally "mailed the forms" and the "IRS received them." *Id.* We held it irrelevant that the IRS "never fully processed" the return. *Id.* So, in the ordinary sense, a tax return is "filed" if delivered to a proper IRS official and the official received the return. *Accord Heard v. Comm'r*, 269 F.2d 911, 913 (3d Cir. 1959) ("[U]nless otherwise defined by statute, filing does not occur until the paper to be filed is delivered to, received and filed by the proper official.").

It's telling that the majority relies on an inapposite, out-of-circuit case to support its reasoning. Maj. Op. 12 (citing *Allnutt v. Comm'r*, 523 F.3d 406 (4th Cir. 2008)). In that case, the Fourth Circuit was interpreting whether a taxpayer complied with a regulation that permits hand-carrying returns to the IRS's regional "district director" or

administrative supervisor.  *Allnutt*, 523 F.3d at 412 (citing 26 C.F.R. § 1.6091-2).  Rather than handing the return to the "district director," his assignee, or even the director's office, the taxpayer gave the return to "an unidentified man of unknown title that he encountered in the hallway somewhere in the [IRS] building."  *Id*. at 413.  The Fourth Circuit easily concluded that the method did not meticulously comply with the regulation.  *Id*.  But, in that case, no one questioned that applicability of § 1.6091-2, and so the Fourth Circuit didn't have to interpret the plain meaning of "filed."  Here, we have a regulatory gap—no IRS regulation squarely addresses the filing of late partnership returns.  And neither *Allnutt* nor the other cases cited by the majority mirror the situation here—where the taxpayer was following the express directions of an IRS agent to send the late return directly to the agent.

Based on the ordinary meaning of "filing," we should have held that a delinquent partnership return is "filed" when an IRS official authorized to obtain and process a delinquent return asks a partnership for such a return, the partnership delivers the return to the IRS official in the manner requested, and the IRS official receives the return.

## C.

IRS guidance confirms this plain-meaning approach to "filing."  In both internal and public policies, the IRS has repeatedly affirmed that taxpayers can file untimely returns by sending them to requesting IRS officials.  And while the majority is right that such policies don't have the force of law and don't confer rights on a taxpayer, *see Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006), that misses the point.  The point is that these policies show that the IRS agrees, as an agency matter, that no regulation governs the process of "filing" late returns and that it, too, follows the

term's ordinary meaning. So we should take the IRS's litigation position with a grain of salt.

Start with IRS Policy Statements. IRS Policy Statements represent the "policies of the Internal Revenue Service" and go "to all persons having a need for any of the policy statements." IRS Manual § 1.2.1.1 (2019). Thus, these are policies for public consumption—meant to provide taxpayers guidance on how the IRS views taxpayers' obligations under the Tax Code and regulations. An IRS Policy Statement specifically addresses "[d]elinquent returns" and the "enforcement of filing requirements." *Id*. § 1.2.1.6.18(1) (2006). The Statement notifies the public:

> Taxpayers failing to file tax returns due will be requested to prepare and file all such returns except in instances where there is an indication that the taxpayer's failure to file the required return or returns was willful or if there is any other indication of fraud. *All delinquent returns submitted by a taxpayer*, whether upon his/her own initiative *or at the request of a Service representative, will be accepted*.

*Id*. § 1.2.1.6.18(2) (emphasis added). Thus, the IRS publicly represents that it will "accept[]" all delinquent returns "submitted by a taxpayer . . . at the request of a Service representative." *Id*. This view of the "enforcement of filing requirements" is only consistent with IRS regulations if § 1.6031(a)-1(e) does not apply to late returns. Indeed, this Policy Statement says nothing about a requirement that a taxpayer must also send the return to a Service Center or that a filing will not be "accepted" until the IRS representative

decides to forward the return to a Center. The only way to read the Statement is that taxpayers may send their returns to a requesting IRS "representative" and trust that the return will be filed. *Id.*

The IRS Manual then provides procedures to ensure that delinquent returns are processed after receipt by an IRS representative:

1. The IRS Manual encourages its staff to "[s]ecur[e] a valid voluntary tax return from the taxpayer (**delinquent return**)." *Id*. § 4.12.1.1.3 (2005).

2. The Manual instructs IRS staff to "[a]dvise the taxpayer of the requirement to file all delinquent returns" and "[a]dvise the taxpayer to *deliver the returns promptly to the examiner*" along with an explanation for the reason for the delay in filing. *Id.* § 4.12.1.7.2.1 (2010) (emphasis added).

3. Once obtained, the IRS examiner is instructed to "[d]ate stamp the delinquent return when it is received." *Id.* § 4.4.9.4.7 (1999).

4. The examiner must then make a copy of the delinquent return to maintain in the case file and write on the original return, "DELINQUENT RETURN SECURED BY EXAMINATION." *Id*. §§ 4.4.9.4.9, 4.4.9.4.10 (2012).

5. Finally, after all these steps are completed, the examiner *must* mail the "delinquent return . . . to the appropriate Campus," i.e., the appropriate IRS Service Center, for processing. *Id.* § 4.4.9.4.13 (2022).

The Manual applies these procedures to partnerships and prescribes steps to take if a partnership "fails to file a delinquent return when requested." *Id*. § 4.12.1.16.3 (2010). In short, the IRS Manual requires IRS staff to request, obtain, and accept delinquent returns from a partnership and then process them. Contrary to the IRS's position here, the IRS Manual does not take the view that a delinquent return must also be sent by the partnership to a Service Center to be considered "filed."

If there was any lingering doubt about the IRS's internal views on the filing of delinquent returns, an IRS Office of Chief Counsel legal memorandum puts that to rest. In the Memorandum, the IRS considered whether "a revenue officer can require a taxpayer to file delinquent returns directly with the revenue officer rather than mailing the returns to the appropriate Service Center." IRS Office of Chief Counsel, Chief Counsel Advice No. 199933039, *Filing Delinquent Returns Directly With Revenue Officers* (Aug. 20, 1999), at 1. The Memorandum was prompted by a local practitioner challenging the "frequent[]" practice of IRS revenue officers demanding taxpayers file delinquent returns with them, rather than mailing the returns to an IRS Service Center. *Id.* at 2.

The IRS Memorandum expressly disagrees with the majority's interpretation of the Tax Code and regulations—also meaning that it disagrees with the IRS's litigation position here. It directly observes that neither the Tax Code nor regulations "make any reference to delinquent returns." *Id.* at 3 n.1. And since the Code and regulations are "silent on the issue of delinquent returns," the IRS concluded that "taxpayers may file their delinquent returns either with the applicable Service Center or with a revenue officer." *Id*. at 4 n.2. What's more, the IRS encouraged taxpayers to file

delinquent returns with IRS officers.  Given the costs and delays in sending a return to a Service Center, the IRS advised that "it is generally in the taxpayer's best interests to *file* the delinquent return directly with the revenue officer instead of mailing it to the appropriate Service Center."  *Id.* (emphasis added); *see also id.* at 4 n.2.

So even the IRS's chief legal officer recognizes that taxpayers can and *should* file a late return directly with the revenue officer rather than send it to a Service Center.  Once again, the IRS Memorandum makes no mention of a need for taxpayers to take the redundant step of sending the late return to the Service Center or the IRS representative's discretion to withhold acceptance of the return by refusing to forward it on to the Service Center.   And contrary to the majority's suggestion, the IRS's legal interpretation didn't turn on the title of the IRS employee—it turned on the duties and responsibilities of the employee.  *See id*. at 3.  And the IRS has not claimed that the IRS revenue agent who contacted Seaview here lacked the authority to request and obtain the partnership's delinquent return.

The IRS doesn't deny that its agency guidances conflict with its current litigation position, but only explains that its internal "procedures are primarily for the benefit of the IRS, not taxpayers."  That may be so, but the point is that the IRS's own directives confirm that taxpayers may file delinquent returns with authorized officials under the Tax Code and IRS regulations.  And the inconsistency of the IRS's position is troubling: The IRS wants the ability to direct taxpayers to submit delinquent returns to its authorized officials, while maintaining the power for its representatives to unilaterally decide whether the returns are "filed" for statute-of-limitations purposes.  The IRS thus views the law one way as an internal matter and another way

for litigation advantage.  But the duty of the government is not to win its cases; it's to administer the law fairly and consistently.

## D.

With these legal principles in mind, resolution of this case should have been straightforward.  Seaview thought it mailed its partnership tax return—also known as a Form 1065—for the 2001 tax year to the Ogden Service Center back in July 2002.  In July 2005, an IRS revenue agent contacted Seaview saying that the IRS had not received the return.  The agent asked Seaview to provide a copy of the return.  In response, in September 2005, Seaview's accountant faxed the agent a signed copy of the return.  In the cover letter to the revenue agent, Seaview's accountant stated: "As we discussed, I have attached the 2001 tax return for Seaview Trading LLC as well as the certified mailing."

A month later, the same IRS agent informed Seaview that its 2001 return had been selected for examination and requested further information.  Once again, the IRS letter requested "[a]ll retained copies of the signed 2001 Form 1065 Federal income tax return of Sea View [sic] Trading and any amendments thereto."  As part of its examination, the IRS interviewed Seaview's accountant in January 2006.  During the interview, the IRS noted that the accountant had "previously provided" Seaview's signed 2001 tax return and introduced the Form 1065 as an exhibit.  In July 2007, Seaview's counsel mailed another signed copy of the 2001 tax return to an IRS attorney "[p]ursuant to [their] prior conversation."

More than three years later, in October 2010, the IRS issued Seaview a Final Partnership Administrative Adjustment for the 2001 tax year.  In that notice, the IRS

stated that "[p]er Internal Revenue Service records, no tax return was filed by [Seaview] for 2001," but said, "[d]uring the examination," the partnership provided "a copy of a 2001 tax return which taxpayer claimed to have filed." The IRS then determined that "none of the income/loss/expense amounts reflected on the 2001 unfiled tax return provided by [Seaview was] allowable." It then informed Seaview that it would adjust the partnership's tax liability for the year.

Under these facts, Seaview is right that the IRS's readjustment of its tax liability was too late. The IRS had three years from the filing of the 2001 return to issue its adjustment of tax liability. *See* 26 U.S.C. § 6229(a) (repealed 2015). Here, the 2001 return was "filed" belatedly in September 2005 when the IRS agent requested the missing return and Seaview later delivered it to him. And there's no question that the IRS received the return since it was acknowledged during the auditing process and used to adjust the partnership's tax liability. We thus should have reversed the tax court.

## II.

Because the IRS's position here is inconsistent with the Tax Code, its regulations, and its own guidances, I would have reversed. I respectfully dissent.